FIRST NATIONAL BANK OF DECORAH *vs.* A. H. LAUGHLIN, *et al.*

Opinion filed December 10th, 1894.

### Provision for Collection Expenses—Destroys Negotiability of Note.

The action being upon a written instrument, which, when executed and delivered by the makers thereof (the defendants,) was in all respects a negotiable promissory note, in form, except as to the words quoted below, which words constituted the last sentence of the instrument above the signatures, viz: "Agreeing to pay all expenses incurred by suit or otherwise in attempting the collection of this note, including reasonable attorney's fees,"—*held*, that the instrument was a nonnegotiable instrument when executed and delivered.

### Material Alteration Extinguishes Debt.

Suit being brought upon such instrument by a good faith purchaser thereof before its maturity, and it appearing when the note was offered in evidence that the words above quoted were striken out and erased from the instrument, *held*, that if it appeared by the evidence that after the delivery of the instrument to the payees, and without the consent of the makers, the instrument was altered as aforesaid, such alteration would be material, and, if fraudulently made, it would so operate as to extinguish the note as a legal obligation, and the debt evidenced thereby.

### Counterclaim for Money Paid Upon Note Which Had Been Fraudulently Altered.

The defendants, by their counterclaim, alleged, in substance the following facts: That said defendants, at the time of executing and delivering the above described instrument, executed and delivered to the same payees another instrument, couched in precisely the same language as that sued upon, except as to time of payment and the amount agreed to be paid; that said instrument after such delivery, and without defendants' consent, was also fraudulently altered by striking therefrom the words about quoted; and that after such alteration, and at the maturity of the note, the plaintiff presented said note for payment to the defendants, and that defendants paid said altered note to plaintiff in ignorance of the fact of such alteration. *Held*, when liberally construed, that the facts alleged are not sufficient to constitute a counterclaim. There is no averment that the note which was paid was given without consideration, and unless it was so given it would be both illegal and contrary to natural justice to compel the plaintiff to refund the money.

### Evidence Improperly Admitted.

Objections to testimony offered by the defendants in support of their counterclaim were duly made by the plaintiff's counsel, and overruled by the trial court. *Held*, upon the grounds last above stated, that such rulings were prejudicial error.

### Court Rules Relaxed in Furtherance of Justice.

*Held*, further, where an error of law is properly specified in a bill or statement, this court (pursuant to No. 15 of its rules) will, in its discretion, relax the requirement concerning the assignment of errors in this court when, as in this case, to do so will, in the opinion of this court, be in furtherance of justice.

### Specification of Particular Grounds of Motion Excludes Others Not Mentioned.

Where, in a motion to direct a verdict for the plaintiff, the grounds of the motion were severally and distinctly stated, and such grounds were invalid, *held*, that a denial of the motion was not error. *Held*, further, that the attention of the court and opposing counsel having been directed to certain specified grounds, all other grounds were excluded, and no other or different grounds will be considered by this court in reviewing the ruling.

### Objections Waived by Failure to Demur.

At the trial, plaintiff objected to testimony offered by defendants to prove the counterclaim, upon the ground that the matter set up in the answer does not constitute a counterclaim in this action. The objection was overruled. *Held*, that the ruling was proper, inasmuch as this objection can only be raised by demurrer.

Appeal from District Court, Ransom County; *Lauder*, J.

Action by the First National Bank of Decorah against A. H. Laughlin and others on a promissory note. Judgment for defendants, and plaintiff appeals.

Modified.

*Newman, Spalding & Phelps*, for appellant.

The alteration to effect the validity of the note, or the obligation of the defendants under it, must be material. 2 Parsons on Contracts, 716, 724; Parsons on Notes and Bills, 564; Jones on Const. of Contracts, 263–4; *Harrington* v. *Crane*, 5 Cal. 173; *Turner* v. *Billingham*, 2 Cal. 520; *Brown* v. *Pinkham*, 18 Pick. 172; *Burlingame* v. *Brewster*, 22 Am. Rep. 177; *Hayes* v. *Mathews*, 30 Am. Rep. 226. The alteration complained of was immaterial. The obligation of the defendants was the same with or without the clause erased.

The defendants cannot recover on their counterclaim. They were not accommodation makers, but had received and held the full consideration for their money paid. The defendants were

guilty of want of ordinary care which as between them and the plaintiff, an innocent party, they were bound to use, and did not on the discovery of the alteration demand repayment. 3 Rand. on Com. Paper, 562, 563; *Johnson* v. *Com. Bank*, 27 W. Va. 343; *Young* v. *Adams*, 6 Mass. 182; *Gloucester Bank* v. *Salem Bank*, 17 Mass. 33; *Price* v. *Neal*, 3 Burrows, K. B. 1354; *Gillette* v. *Brewster*, 20 At. Rep. 105.

*P. H. Rourke*, for respondents.

As the notes were originally made they were nonnegotiable in form. *Garretson* v. *Purdy*, 3 Dak. 178, 14 N. W. Rep. 100; § § 1822, 1827, Civil Code. The erasure of the stipulation for payment of attorneys fees and costs, was a material alteration. It changed the obligation from a nonnegotiable contract to a negotiable promissory note. Daniels Neg. Inst. 1395; Edwards on Bills, 95; *State* v. *Stralton*, 27 Ia. 424; *Brown* v. *Straw*, 6 Neb. 536. The effect of such alteration is to destroy the altered instrument as a legal obligation, whether made with a fraudulent intent or not. Daniels on Neg. Inst. 1411; *Harsh* v. *Kleppen*, 20 Ohio St. 200; *Booth* v. *Power*, 56 N. W. Rep. 31; *Needles* v. *Shaffer*, 60 Ia. 65; Fraudulent alterations extinguish the debt. Daniels Neg. Inst. 1410; *Booth* v. *Powers*, 56 N. Y. 31; *Meyer* v. *Huneke*, 55 N. W. Rep. 412. The burden of proof is on plaintiff to show that the alteration was made before the instrument was delivered. Daniels Neg. Instruments, 1417; *Adair* v. *Egland*, 58 Ia. 315. A note materially altered is void in the hands of innocent third parties, who took the same for valuable consideration before maturity and without notice. *Scofield* v. *Ford*, 9 N. W. Rep. 309; *Wait* v. *Pomeroy*, 20 Mich. 425. Money paid under a mistake of fact may be recovered back. Daniels Neg. Inst. 1369; *Louisiana* v. *Wood*, 101 U. S. 198; *Carpenter* v. *Northburg Nat. Bank*, 123 Mass. 69. A party making payment upon a security bearing a forged signature, supposing it to be genuine may recover back the amount. Daniels Neg. Inst. 1369; *Welsh* v. *Goodwin*, 123 Mass. 77. And if the signature be genuine but the instrument has been so altered as to render it void, the accomodation party who pays

it by mistake or ignorance of alteration may recover back the amount. Daniels Neg. Inst. 1369; *Fraker* v. *Little*, 24 Kan. 598; *Fraker* v. *Cullum*, 21 Kan. 555. Defendants counterclaim was proper. *McGregor* v. *Auld*, 21 N. W. Rep. 835; *First Nat. Bank* v. *O'Connell*, 51 N. W. Rep. 832. But if this payment was not a proper subject of counterclaim, plaintiff should have raised the question by demurrer and they have waived their right to object, by replying thereto. *Campbell* v. *Jones*, 25 Minn. 157; *Walker* v. *Johnson*, 9 N. W. Rep. 632; *Lace* v. *Fixer*, 19 N. W. Rep. 762.

WALLIN J. Plaintiff sues as the bona fide purchaser of a promissory note. The complaint is in the usual form, and describes the note upon which suit is brought. Plaintiff claims as indorsee of Rix & Goodenough. The action was against the makers of the note. The defendants, in their answer, deny that they ever executed or delivered the note described in the complaint, but admit that they executed and delivered to the firm of Rix & Goodenough a writing in all respects similar to the note described, except that it contained the words: "Agreeing to pay all expenses incurred by suit or, otherwise in attempting the collection of this note, including reasonable attorney's fees." And they allege that after the execution and delivery of said note, and without the knowledge or consent of defendants, or either of them, the said note was materially and fraudulently altered by striking therefrom the words above quoted, and allege that said alteration changed said note from a nonnegotiable to a negotiable instrument, and rendered the said note void, and extinguished the indebtedness upon which it was based. They further set up that the note in suit and two others were executed and delivered by them to said Rix & Goodenough as the purchase price of one stallion purchased by them from said firm at the agreed price of $2,000; that one of said notes was for $600, and the other two, one of which is here in suit, for $700 each; that said stallion was sold with a warranty to the effect that he was sound and healthy, and a good foal getter. They negative the existence of these qualities, and allege that the horse was worthless. As a separate

and distinct counterclaim, defendants alleged the execution and delivery of the $600 note, the same being identical in all respects with the note sued upon except as to amount and date of maturity; allege the alteration of said note in the same manner and for same purpose as the note in suit; and state that at or soon after the maturity of said note the defendants, by mistake, and in ignorance of said alteration, paid the amount of said note to the plaintiff herein, and took the same up. Defendants demand judgment of dismissal as to plaintiff's cause of action; also judgment on said counterclaim for the sum of $662, with interest from November 1, 1891. There was a jury trial, and the verdict was, "No cause of action as to the note described in the complaint," and was in favor of defendants to the full amount of said counterclaim. The plaintiff moved for a new trial, basing the motion on a statement of the case. The District Court denied the motion, where upon judgment was entered below upon such verdict, from which plaintiff appeals to this court.

The errors assigned in this court are:

The court erred in permitting defendants to amend their answer. This assignment of error is untenable. During the trial the court permitted the answer to be amended by adding thereto the following words concerning the warranty: "And in the sale of said stallion by said Rix & Goodenough, and the purchase by defendants, the defendants relied wholly upon said warranty, and purchased the horse upon the faith thereof, and not otherwise." The trial courts have extensive discretionary powers under the Code in the matter of granting amendments to the pleadings, either before or after judgment, in furtherance of justice; and it is well settled that the exercise of such discretion will not be reviewed by the appellate courts except in cases of abuse. The amendment allowed in this case introduced no new feature into the case, and could not, we think, have operated as a surprise to the plaintiff. Finding no abuse of discretion in allowing the amendment, this assignment of error is overruled.

The second assignment of error is as follows: "The court

erred in admitting evidence of the alleged alteration of the notes in question." Against plaintiff's objection thereto, evidence was introduced by the defendants tending strongly to show that all of the notes, when signed and delivered by the makers thereof to Messrs. Rix & Goodenough (the payees,) were in the words and figures as set out in the defendants' answer; and that all of said notes, after their execution and delivery as aforesaid, were altered by some one other than the defendants, by striking therefrom, and from each and all of them, the following language: "Agreeing to pay all expenses incurred by suit or otherwise in attempting the collection of this note, including reasonable attorney's fees." We are of the opinion that the testimony was admissable. The defense of a material and fraudulent alteration of the notes after their delivery is pleaded in the answer both as to the note sued upon by the plaintiff and the note pleaded in connection with the defendants' counterclaim. We think the defense of a material and fraudulent alteration of the notes as above pleaded in the answer is a valid legal defense to the notes, and, if established by testimony, would operate, as against the defendants, to extinguish both the notes and the debt evidenced by them. The notes, in the form in which they were drawn and delivered to Rix & Goodenough, were, by a decided weight of authority, nonnegotiable instruments. The last sentence in the notes above the signatures operates to render the paper nonnegotiable in form and in law; but if the erasure was done after delivery, and for a fraudulent purpose, the effect would be to nullify them, and extinguish the debt as against the makers. When so altered, the notes would have the appearanee on their face of valid, negotiable paper, as the legal presumption *prima facie* is that alterations appearing upon written instruments were made before delivery. But, as we said, the notes, when fraudulently altered after delivery, would, as against the makers, cease to be valid obligations, even in the hands of a good faith purchaser. A settled public policy, long sanctioned by the .courts, demands that such fraudulent paper should be rendered null and void as against the maker thereof.

After such alteration, the paper is no longer the same paper as that sent out by those who executed and delivered the original instrument. This doctrine has long since become elementary law, and is distinctly voiced by the Civil Code. Comp. Laws, § 3595; 1 Am. & Eng. Enc. Law, p. 502, note 1. See authorities below. It is settled that the alteration of a note nonnegotiable in form when delivered so as to invest it with the form and guise of negotiable paper is a material alteration, and, if done fraudulently, the alteration will extinguish the debt as well as the note as against the makers. Daniel, Neg. Inst. § § 1395, 1410; Rand. Com. Paper, § § 1742, 1750, 1753; *Eckert* v. *Pickel*, 59 Iowa, 545, 13 N. W. 708; *Huntington* v. *Finch*, 3 Ohio St. 445; *Ide* v. *Churchill*, 14 Ohio St. 372; *Johnston* v. *May*, 76 Ind. 293; *Chism* v. *Toomer*, 27 Ark. 108; *Lee* v. *Starbird*, 55 Me. 491; *Booth* v. *Powers*, 56 N. Y. 31; *Plow Co.* v. *Campbell*, (Neb.) 52 N. W. 883. In the last case cited it is held that a defendant under a general denial may show that a note signed and delivered by him is not his obligation, because it has been fraudulently altered since its delivery, and made negotiable in form, and its character thereby changed. This was held as against a good faith purchaser. The case is much in point, and cites numerous authorities in support of the general proposition we have laid down.

But appellant's counsel contend that the notes as originally framed and delivered were negotiable paper, and cite authority in support of their contention. But, in our opinion, the decided weight of precedent will show that the language claimed to have been erased would render them nonnegotiable. The Code seems to settle the point against appellant's contention. Section 4462 reads: "A negotiable instrument must not contain any other contract than such as is specified in this article." We think the contract contained in the words claimed to have been erased is collateral, and it is clear that such contract is not to be classed with any of the permissable contracts enumerated in the article in which section 4462 is found. The section quoted received a construction at the hands of the late Supreme Court of Dakota

Territory, and that learned court held that the section was deci-
sive of the point now involved in this case. *Garretson* v. *Purdy*,
3 Dak. 178, 14 N. W. 100. The note in that case contained the
following clause: "If action be commenced thereon, attorney's
fees for collection." This note was held to be uncertain as to the
sum to be paid, and in the course of the opinion the following
language was quoted from *Woods* v. *North*, 84 Pa. St. 410, which,
despite its metaphor, we reiterate with approval: "But a colla-
teral agreement, as here, depending, too, as it does, upon its
reasonableness, to be determined by the verdict of the jury, is
entirely different. It may well be characterized, like an agree-
ment to confess a judgment was by Chief Justice Gibson, as
'luggage' which negotiable paper, riding, as it does, on the wings
of the wind, is not a courier able to carry. If this collateral
agreement may be introduced with impunity, what may not be?
It is the first step in the wrong direction which costs. These
instruments may come to be lumbered up with all sorts of stipu-
lations, and all sorts of difficulties, contentions, and litigation
result." See *Morgan* v. *Edwards*, (Wis.) 11 N. W. 21; *Bank* v.
*Purdy*, (Mich.) 22 N. W. 93; *Manufacturing Co.* v. *Newman*, 45
Am. Rep. 750. But appellant's counsel further contend that the
last sentence in the note in suit was wholly void under the
statute, and that the note was neither better nor worse after strik-
ing it out. Counsel cites § 1, Ch. 16, Laws 1889, to show that the
clause, so far as it relates to the payment of an attorney's fee, is
void under the express language of the statute; and then cites
§ 3577, Comp. Laws, to show that the rest of the obnoxious
sentence is also void as "contrary to the policy of express law,
though not expressly prohibited." Section 1, Ch. 16, Laws 1889,
was aimed at attorney's fees alone, and such fees, when stipulated
to be paid in any "note, bond, mortgage, or other evidence of
debt," were declared to be "against public policy and void." The
act goes on to prescribe attorney's fees to be taxed upon fore-
closures of mortgages, real and personal, and whether in court
or by advertisement; but we can discover no intimation in the

statute that it was the legislative purpose to deal with the matter of the "expenses incurred by suit or otherwise in attempting the collection" of notes,—*i. e.* expenses outside of attorney's fees. On the contrary, we think that the fact that no charges for collection were mentioned in the statute, other than attorney's fees, shows inferentially that attorney's fee alone were in the mind of the legislature; and we are of the opinion that we would not be justified in concluding from that statute, or from any other, that expenses of collection aside from attorney's fees are against the policy of express law. We therefore hold that the language in question—aside from attorney's fees—is not void, but forms a part of the instrument, and operates, as already shown, to render the paper nonnegotiable.

The third assignment is: "The court erred in admitting evidence of warranties not contained in Exhibit B." Exhibit B was the bill of sale of the stallion, and among its provisions is this: "In case the above mentioned stallion fails to be a reasonable foal getter, through any defect, at the time of sale, the said purchasers have the right to return said stallion after a fair trial of two years, and receive another of equal value in exchange; said stallion to be returned to us in as good and sound condition as when sold. If said purchasers desire to take a stallion of higher value, they may have the privilege by paying us the difference." The fourth assignment is as follows: "The court erred in admitting evidence with reference to breach of warranty." The third and fourth assignments of error may be considered together. Counsel argues in this court that evidence of a breach of the warranty was inadmissable, for the reason that the writing in terms imposes upon the purchasers of the stallion the duty of returning the same within two years in the event of a breach of the warranty, and that defendants are limited to that course, and cannot recoup in damages for any breach. We do not so construe the writing. The language is: "Said purchasers have the right to return said stallion," etc. The wording clearly confers upon defendants an option, but this stipulation is not imperative in

form, but is permissive in its terms. It does not purport to make the remedy exclusive. We think the right to return as stipulated is merely a cumulative remedy, and one which may be resorted to at the purchaser's option, in addition to common law remedies for a breach of warranty. There was some evidence introduced, against plaintiff's objection, tending to prove that collateral and oral warranty of the horse was made in addition to that embodied in Exhibit B. This evidence was stricken out, however, during the trial, under the charge of the court. could not possibly have operated to plaintiff's prejudice. In fact, all the evidence touching warranties—whether written or oral—was put in the case for a special purpose, and was not introduced in support of the counterclaim or as a basis for recouping damages as for a breach of warranty. This is made entirely clear by the court in its charge to the jury as follows: "Testimony was offered here as to the warranty of this horse, and testimony was offered as to whether or not he fulfilled the warranty. This was introduced simply for the bearing it had upon the question of whether or not these notes were changed after they were delivered. It was offered by the defendants for the purpose of showing the motive Rix & Goodenough might have had, or the reason why they would have made this alteration; and you may consider it for that purpose, and for no other." We are of the opinion that the evidence was competent, at least for the special and limited purpose for which it was offered as explained in the charge, and therefore we shall overrule the two assignments of error now under consideration.

The fifth assignment of error is as follows: "The court erred in submitting the case to the jury." At the close of the testimony plaintiff moved the court to direct a verdict for the plaintiff on the ground that "there is no testimony showing that there has been any alteration of the note in suit by any party entitled to benefit under it or by his consent; and, further, that the undisputed testimony shows that the plaintiff is the bona fide holder of the note in suit, purchased for full value, before maturity, and without knowledge of any defense." This motion was overruled,

and plaintiff excepted to the ruling. The ruling was clearly proper. Whether the notes had been altered after delivery, and, if altered, by whom the alteration was made, and for what purpose, were all questions of fact to be submitted to the jury under the evidence and instructions of the court. Nor would the fact, if it were a fact, that the notes were purchased in good faith after a fraudulent alteration, make any difference in the legal aspects of the case, if the jury found the fact of a fraudulent alteration after delivery. "The plaintiff further move the court to withdraw from the consideration of the jury any consideration of the counter-claim attempted to be filed in defendants' answer, upon the ground that there is no sufficient allegation in the answer showing any intentional destruction, cancellation, or material alteration of the note upon which this suit is brought by any party entitled to any benefit under it." This ground of the motion to withdraw the counterclaim is obviously invalid. Its concluding language points directly to another feature of the case, viz. the note upon which "suit is brought;" but, if the objection was aimed at the allegations touching the counterclaim, it is still, in our opinion, unsound. We think the pleader has substantially alleged a fraudulent alteration of the counterclaim note, and that under such averments evidence of a fraudulent alteration was clearly admissible. The objection goes to the pleading, and not to the evidence.

The plaintiff requested that the counterclaim be withdrawn from the consideration of the jury upon the further ground "that the counterclaim attempted to be pleaded in this action is based upon a fraud, and is not a proper subject for a counterclaim in this action." Error cannot be affirmed of this ruling. Whether the counterclaim, assuming it to be well pleaded, was one that could be interposed in this action, is a question which could not be raised at the trial by motion, and could only be raised by demurrer. Comp. Laws, § 4918; *Walker* v. *Johnson,* (Minn.) 9 N. W. 632; *Lace* v. *Fixen,* 39 Minn. 46, 38 N. W. 762; *Ayres* v. *O'Farrel,* 10 Bosw. 143. Moreover, we are of the opinion that

the counterclaim attempted to be pleaded, if any exists, does not sound in tort, but, on the contrary, arises *ex contractu; i. e.* from an implied promise on plaintiff's part to refund the money paid under a mistake of fact to discharge the first note of the series in question. As has been seen, the precise grounds upon which the plaintiff rested its motion to direct a verdict in its favor were specified in the motion, thereby directing the attention of the trial court and the opposing counsel to the particular grounds and reasons stated in the motion, to the exclusion of all others. We have already said that in our opinion the several grounds of the motion are untenable, and it follows not only that the denial of the motion was not error, but also follows, under an established rule of practice, that this court, in reviewing the ruling of the trial court in denying said motion, will not explore the record for other grounds which may be, and in this case could be, found in the record; but which were not called to the attention of the court below. Naming the grounds operates to exclude all other grounds. *Belcher* v. *Murphy*, (Cal.) 22 Pac. 264; *Shain* v. *Forbes*, (Cal.) 23 Pac. 198 (see page 200;) *Coffey* v. *Greenfield*, 62 Cal. 602; Haynes, New Trials & App. § 116; *Mattoon* v. *Railroad Co.*, (S. D.) 60 N. W. 740. In its charge to the jury the learned trial court said, in substance, that if the jury found from the evidence that the notes given for the stallion were fraudulently altered after their delivery, as claimed by the defendants, their verdict must be for the defendants. This instruction was pertinent to the testimony and to the issues made by the pleadings, and undoubtedly stated the law correctly. But the court further instructed the jury as follows: "I will instruct you further, gentlemen, that the presumption is that the note is in the same condition now that it was when it was signed and delivered. That is a presumption of law, and you must believe that, and find it as a fact, unless the defendants have convinced you that they are right as to whether or not there has been an alteration made in these notes after they were signed and delivered, as claimed by these defendants. Then you must find a verdict for the defendants for

the amount of that $600 note, with the amount of interest." It is very clear to our minds that the instruction quoted embraces a legal fallacy, and that such instruction was highiy prejudicial error. While it is true, as has been shown, that a fraudulent and material alteration of the notes would operate to extinguish the notes and the debt evidenced by them, and would defeat any action brought upon such notes or the debt against the defendants, it by no means follows that the law will permit the defendants to recover back from the plaintiff the amount paid in taking up one of the notes which was paid in ignorance of the fact of its alteration. By their counterclaim defendants are seeking to recover from the plaintiff the money paid in taking up the note which first matured of the series of notes given for the stallion; and the jury were instructed, in effect, that the defendants could recover if they found that the fraudulent and material alteration of the counterclaim note had been made as claimed by the defendants. This does not follow. The money, though paid in ignorance of the alteration, was in fact paid, and was intended to be paid, to take up a note given for the purchase money of a stallion sold to defendants for the agreed price of $2,000. The note, being a written instrument, imports a consideration under the Code, and the evidence shows that it was given in consideration of the sale of a stallion sold for $2,000 to the defendants, and delivered to them, and never returned. It appears that defendants at the trial offered evidence tending to show a breach of the warranty of the stallion, but it has been seen that all such evidence was introduced for the sole purpose of suggesting a possible motive for the alteration of the notes; and the jury was squarely instructed to consider all such evidence for that purpose, and that alone. We have examined the evidence, however, and find that while it tends to show a breach of warranty, it fails to show any amount of damages in dollars and cents as resulting from such breach, and wholly fails to show that the stallion was of no value whatever. The pleadings, the evidence, and the instructions to

the jury are, one and all, replete with proof that the defendants defended, as against the plaintiff's cause of action, and prosecuted their counterclaim, upon one and the same theory, namely, that the fraudulent alteration of all of the notes and the payment of one of the notes under a mistake of fact, if established at the trial, would suffice—*First*, to defeat the plaintiff's cause of action; and, *second*, to secure a recovery against the plaintiff upon the counterclaim. But this theory, while it applies to the facts to the extent of defeating the plaintiff's action upon one of the notes, is only partially applicable to the cause of action attempted to be set up as a counterclaim. The counterclaim is in the nature of an action for money paid to plaintiff by defendants under a mistake of fact. The payment under a mistake of fact was shown, and it further appeared that it was paid to discharge a note given by the defendants for a horse, which note the plaintiff had bought in good faith before maturity, and then held. For technical reasons, and largely upon considerations of public policy, already sufficiently discussed, no action could have been maintained upon the note so paid, as against the defendants, and for the same reasons an action would not lie at law upon the debt evidenced by the note. But here the plaintiff was not suing upon either the counterclaim note or the debt behind it, and hence the rule barring a recovery does not apply in the same way or to the same extent. Here the general rule governing the payment of illegal or outlawed claims under a mistake of fact is applicable. In such cases it is elementary that it is not enough to show the illegality of the claim and the fact of payment under a mistake of fact. The proof must go further and show that the money so paid was not due in equity and good conscience and that upon principles of natural justice the money should be returned. See Keener, Quasi Cont. Ch. 2, for an instructive discussion of the subject. On page 43 the learned writer uses the following language: "To entitle the plaintiff who has paid money under a mistake to recover the money so paid, he

must not only prove that he has paid the money without receiving the equivalent contemplated by him, but he must, in addition thereto, prove that it is against conscience for the defendant to retain the money so paid. Thus, for example, money paid in ignorance of the fact that the statute of limitations has run, cannot be recovered; for, although the creditor could not have collected the claim by suit had the debtor interposed the defense of the statute of limitations, yet, since he received from his debtor only what in point of conscience was due, he is doing nothing inequitable in refusing to return it;" citing *Moses* v. *Macferlan*, 2 Burrows, 1005, in which Lord Mansfield uses pointed language to the same effect as that quoted above. As the proposition is elementary, it will suffice to cite in addition to the numerous cases cited in Keener on Quasi Contracts a very full collection of cases in 18 Am. & Eng. Enc. Law, p. 225 *et seq.* Applying this principle to the case under consideration, it is obvious that the instruction of the court with reference to the counterlaim was erroneous and misleading; nor did plaintiff's counsel as he should have done, request that the court should instruct the jury properly or otherwise than it did. But, turning to the record, we find the charge of the court to the jury was not challenged by a single exception; nor is any error predicated upon the charge attempted to be assigned in this court. It follows, of course, that the judgment, for technical reasons, cannot be reversed upon the ground of an erroneous charge to the jury.

But, looking further, the record discloses another error, which, in our opinion, is fatal. We think the answer fails to state facts sufficient to constitute a counterclaim, and that the question was properly raised at the trial by objections to the testimony. The objections were all overruled, and an exception was taken to the rulings. The rulings are specified as error in the statement of the case. No testimony was offered at the trial tending to supply the facts omitted in the pleading. The omission in the counterclaim as pleaded is this: No facts are pleaded, or attempted to be pleaded, showing the equity to refund the sum paid. There was

no allegation of facts showing or tending to show that it would be against good conscience or natural justice for the plaintiff to keep the money paid over to the plaintiff in taking up the note which first matured. For reasons already given, these facts are vital. They would constitute the gravamen of the counterclaim if they were pleaded therein. They were omitted from the counterclaim. It is true that the answer in another part—*i. e.* that which has reference to the defense pleaded as to the note upon which plaintiff brings the action—contains averments which might have sufficed had they been repeated or realleged in the counterclaim, but such facts were not repeated, realleged, or incorporated by reference. The averments in the defensive part of the answer to which we refer are as follows: "That said stallion was at the time of said sale unsound and unhealthy, and a poor foal getter, and of no value whatever, and has ever since so remained." These facts, if alleged, would show that the note which was paid was given without consideration, and would raise an equity in favor of the defendants, and supply the missing element in defendants' counterclaim. But none of these averments appear in the counterclaim. There is no attempt, in setting out the counterclaim, either to reallege such facts or to incorporate them by sufficient reference, which might have been done. The counterclaim, it is true, refers to the note as one of the series given for the stallion; but this is merely descriptive of the note, and serves to indentify it, but it falls far short of a statement of the essential facts to which reference has been made, or other equitable facts. All material facts must be stated in each cause of action or counterclaim; nor can a material fact be supplied by any statement elsewhere made in the pleading, unless the same is incorporated by suitable and apt words of reference. See *Jasper* v. *Hazen*, 2 N. D. 401, 51 N. W. 583; Bliss, Code Pl. § 121. The same author (section 346,) quoting from a New York case, uses this language: "By the well settled rules of pleading, each answer must of itself be a complete answer to the whole complaint as perfectly as if it stood alone. Unless in terms it

adopts or refers to matter contained in some other answer, it must be tested as a pleading alone by the matter itself contains." Tested by this elementary rule of pleading, the averments of the counterclaim are insufficient. The material fact, if it is a fact, that the note connected with the counterclaim was given without consideration, is neither alleged nor attempted to be alleged. Nor is such omission supplied by any evidence, while, on the contrary, the entire scope and tenor of the averments in the counterclaim show clearly that the defendants expected to recover on the counterclaim by showing the payment of the altered note under a mistake of fact. As has been seen, such facts alone are not sufficient. This error appears properly specified in the statement of the case, but is not assigned as error in this court. Under the circumstances, however, we feel fully justified in exercising a discretion reserved in Rule 15 of the rules of this court to relax the rule in this case in furtherance of justice. See *O'Brien* v. *Miller*, (decided at this term) 60 N. W. 841. The judgment against the plaintiff upon the counterclaim is entirely without support in the pleadings or in the proof, and upon the record before this court it is as conspicuously illegal as it is manifestly unjust. It follows that the judgment must be modified, and a new trial granted, as to the counterclaim. In all other respects the judgment will be affirmed. The appellant will recover the usual costs and disbursements in this court. See *Braunsdorf* v. *Fellner*, (Wis.) 45 N. W. 97; Haynes, New Trials & App. § 295.

Modified and affirmed. All concur.

BARTHOLOMEW, C. J. (concurring.) I concur in the opinion prepared by Judge Wallin. I think the facts of this case distinguish it by material differences from *Fraker* v. *Little*, 24 Kan. 598, and *Garland* v. *Bank*, 9 Mass. 408, and *Talbot* v. *Bank*, 129 Mass. 67. *Fraker* v. *Little* presents a case of a material alteration of a promissory note. The note was given by plaintiff to a bank of which Little was subsequently the receiver. In ignorance of the alteration, plaintiff paid the note, and afterwards, on learning the fact, brought an action to recover the money paid, and was

successful. The learned jurist who wrote that opinion said: "Plaintiff being but an accommodation maker, there was no antecedent indebtedness of his to the bank." Therein lies the distinction. Plaintiff in that case executed the note solely for the accommodation of the president of the bank, and received no consideration whatever. The alteration extinguished all legal obligation. Plaintiff paid the note in ignorance of the alteration. As against him, there was no equity to forbid a recovery. By a recovery he simply received back that with which he had parted for nothing, and in no manner enriched himself. The distinction between the case under consideration and the cases from Massachusetts is perhaps less obvious. These cases are similar in their facts. In each an indorser had discounted a negotiable note at the bank, and received the proceeds therefrom. Subsequently the indorser paid the note to the bank, believing that there had been such presentment for payment to the maker, and such protest, as made the indorser liable on his indorsement. In fact, for technical reasons, the presentment had been insufficient in each case to charge the indorser. On ascertaining the facts the indorser tendered the note back to the bank, and brought suit to recover amount paid, and was successful. Now, it may be that in each case the bank parted with its money solely on the strength of the indorsement, and the indorser certainly received the money. But originally he parted with the amount of the note when he received it from the maker. He acted as the conduit through which the note passed from the maker to the bank, and received from the bank that with which he had parted. Thus far in theory at least, for I do not consider the discount—his estate was neither better nor worse for the transaction. When he repaid the money to the bank, he paid a demand which he was under no legal obligation whatever to pay. To the extent of such payment his estate was impoverished. By a recovery he received back that which he had parted for nothing. His estate was in no manner enriched by the transaction. In the case at bar the defendants have the horse, the contract price for which was

$2,000. They have paid, by mistake, $600 of that amount. It is settled that they can be required to pay no more. If now they recover the amount paid, they will have received back all with which they parted, and will also have the horse, which they have failed to prove was worthless, or was not worth all that has been paid. In other words, they will have something of value for nothing. This is not equitable, and, on the broad principle announced in the main opinion, the judgment on the counterclaim is properly reversed.

(61 N. W. Rep. 473.)