(88 N. W. Rep. 455.)

---

FRANK J. PORTER, *et al. vs.* L. M. HARDY, *et al.*

Opinion filed Dec. 12, 1901.

**Alteration of Instruments—Effect.**

> The material alteration of a written contract by a party entitled to a benefit thereunder, or with his consent, extinguishes all the executory obligations of the contract in his favor as against parties who do not consent to the alteration; and where the instrument so altered is converted, by such alteration, into a negotiable promissory note, such note is void, even in the hands of a bona fide holder.

**Negligence Amounting to Estoppel.**

> An apparent exception to the foregoing rule exists in cases where parties sign skeleton notes, or notes not entirely filled out. In such cases the makers are sometimes held liable upon the completed instrument in the hands of good-faith purchasers, upon the ground that by signing the same in blank they impliedly authorized the holder to fill out the blanks in harmony with the general purpose of the instrument; and upon the further ground that the act of signing in blank was gross negligence, amounting to an estoppel as against a bona fide holder.

**Skeleton Note—Signing—Detachment.**

> The defendants, who are farmers, with a view to forming an association to purchase a stallion from one E. Cooper, and at the request of the latter's agent, signed a contract wherein they agreed to associate themselves together for that purpose. This contract was contained in a bound book, and covered two pages. Portions of the contract were not filled out when signed. That portion on the lower page was in the form of a skeleton note, but was in fact an integral part of the contract. This portion was feloniously severed by Cooper's agent, and converted into a negotiable promissory note, and the same

was transferred to the plaintiff in due course. Defendants read the contract 'before signing it, and understood its general purpose. It is *held* that the note is void, and upon the facts of this case authority to fill out the 'blanks on the lower page and detach the same from the rest of the contract, thereby creating an entirely different instrument from that signed, cannot be implied.

## Defendants Not Estopped to Repudiate.

*Held*, further, that the defendants were not negligent in signing said instrument upon the facts set forth in the opinion, and are not, therefore, estopped from asserting that the note in suit is not their contract.

Appeal from District Court, Wells County; *Glaspell*, J.

· Action by Frank J. Porter and others, doing business under the firm name of Porter, Melick & Co., against L. M. Hardy and others. From a judgment in favor of defendants, plaintiffs appeal. Affirmed.

*George A. Bangs* and *Cochrane & Corliss,* for appellants.

*F. Baldwin,* for respondents.

Young, J. Plaintiffs, for cause of action, allege that on May 5, 1893, the defendants executed and delivered their promissory note, dated on that day, wherein, for value received, they promised to pay one E. Cooper, or order, $700, on October 1, 1894, $700 on Oceober 1, 1895, and $600 on October 1, 1896, with interest at the rate of 8 per cent. per annum until paid, payable annually; and 'that plaintiff is indorsee in due course of said note; and that the same has not been paid. The defendants, who are ten in number, answer jointly. Broadly stated, their defense is that they did not execute the note sued upon. The answer admits the genuineness of their signatures, but alleges a fraudulent and material alteration of the instrument to which such signatures were originally attached, and a total want of consideration. The trial was to the court without a jury, under § 5630, Rev. Codes, 1899. Judgment was ordered and entered for defendants. Plaintiff has appealed from the judgment, and in a statement of case settled under said section has specified for retrial by this court the eighteenth finding of fact made by the trial court, which finding is that "the defendants in. signing said paper in the manner and form in which it was presented to them, were not guilty of negligence." All other findings of fact are conceded to be correct.

The following facts material to a determination of the questions presented by this appeal are established by the findings which are unchallenged: On or about May 5, 1893, one R. A. Whitehead had a number of imported stallions at Carrington, in Wells county. The stallions were owned by E. Cooper who was a breeder and importer of blooded stallions, residing near Adrian, Minn. Whitehead, who was Cooper's agent to sell said stallions solicited these defendants, who were farmers residing in the vicinity of Car-

rington, to organize a stock company with a capital stock of $2,000, for the purpose of purchasing one of these stallions. The contemplated purchase was conditioned upon the organization of the company and an examination of the stallion. The defendants agreed with Whitehead that they would meet and try to form a stock company if a sufficient number of farmers would meet with them, and the said Whitehead thereupon produced a book, which was so bound in the middle that upon being opened the two pages appeared to be one continuous statement or contract, and said statement or contract was so punctuated that it would show one continuous instrument; whereas in fact the leaves of the book were so perforated that they could be detached down in the binding, but in such a manner as not to be easily perceptible. Said Whitehead requested the defendants to sign said statement or contract, stating and representing to them, and each of them, that all he wanted was their names to show that they were willing to meet and form a stock company, and that when he got names enough he would notify them, and have them meet for that purpose. He also represented that the memorandum of agreement was to the effect that the signers thereof would meet, and form a stock company, and, if organized, they would buy a hores, and give three notes therefor to E. Cooper, if, on examination, they were satisfied with the horse; and it was agreed that they were not to execute and deliver their promissory note until said organization was duly effected, and a horse bought. Relying upon these representations, the defendants signed the printed document contained in the book referred to. In said book commencing upon the upper page, and ending at the botton of the lower page, were the following words and figures, when signed by these defendants, to-wit:

### Stock Contract.

We, the undersigned stockholders, realizing the necessity of improving our horses, do hereby associate ourselves together to buy of E. Cooper the imported ............ stallion ............ No. ..................... Said ........................ is guarantied to be a breeder. Certificate of registry to accompany the horse. Capital Stock, $2,000.00.                                                    May 5, 1893.

For value received we, or either of us, promise to pay to ......, or order, ......dollars on the first day of ......, 189.., and ...... dollars on the first day of ......, 189.., and ...... dollars on the first day of ...... 189.., Bank of ........, with interest at ...... per cent. per annum from date until paid, payable annually.

Here followed the signatures of the defendants.

That portion of the contract above set out down to the words "Capital Stock," and including the same, was upon the upper page, and the rest was upon the lower page. Between the pages, and close under the bound portion of the book, were perforations, by which the lower page could be detached. This book was presented

to the defendants for their signatures while they were at work in their fields. All of them were able to read and write, and they all read the paper hereinbefore set out before signing the same and they understood its general purpose. Whitehead, however, opened the book but partially, and because of the way in which it was bound it was almost impossible to notice the perforations. Thereafter Whitehead, without the knowledge or consent of these defendants, or any of them, tore off the lower page, containing the signatures of these defendants, and filled in the blanks so as to form the note sued upon, which note omitting the signatures, reads as follows:

$2,000.00.                                    *New Rockford, N. Dak.,*
                                                *May,* 5, 1893.

For value received, we, or either of us, promise to pay to *E. Cooper,* or order, *seven hundred* dollars on the first day of *October,* 1894, and *seven hundred* dollars on the first day of *October,* 1895, and *six hundred* dollars on the first day of *October,* 1896, at *New Rockford,* N. D., Bank of *New Rockford,* with interest at *eight* per cent. per annum from date until paid, payable annually.

The words and figures in italics were filled in by Whitehead. The stock company was not formed, and no horse was purchased by the defendants. Whitehead, however, after detaching the lower page, and filling out the blanks, sent the pretended note to E. Cooper, his principal. On or about June 1, 1893, Cooper indorsed the note in suit to plaintiff as collateral security to a debt which he then owed it, and received back from plaintiff other collateral security. The amount of Cooper's indebtedness to the plaintiff was then and is now in excess of the amount of the note here in suit.

It further appears from the findings that no part of the note in suit has been paid; that plaintiff parted with value for said note in the due and regular course of business, before maturity, and in good faith, without notice of any defects in the execution of said paper, or of the fact that a portion of it had been filled out after it had been executed by the defendants to said E. Cooper, or that any paper or writing had been attached to said paper, or was in the same book with it, or of any other matter or thing which would provoke inquiry as to the defense now set up by the defendants.

The question of the defendants' negligence in signing the document, which was afterwards converted into the note in suit,—and that is the only question relied upon by appellant,—is to be determined upon the facts hereinbefore set out. The trial court found, both as a matter of fact and as a conclusion of law, that the defendants were not guilty of negligence. It appears from the facts already stated that the note in suit is without consideraion, and that it has been materially altered, and is not the instrument originally signed by the defendants. It goes without saying that, as between the original parties, a recovery could not be had. The defense now interposed would necessarily be sustained. What is the position of the plaintiff, who concededly is a purchaser of the note in

due course? Can the plaintiff, merely because it is a good faith purchaser of the note in suit, recover on the same, notwithstanding the fact of the alteration of the instrument? There can be no doubt that under the general rule relating to the alteration of instruments a negative answer would be required to this question. The alteration in this case was material, and made by the agent of the payee, and without the consent of the defendants. It is well settled that, even as against an innocent indorsee, a negotiable instrument so altered is rendered void. The rule which is sustained by both reason and authority is well stated by Judge Dillon in his article on "Alteration of Instruments" in 2 Enc. Law & Proc., at page 177, as follows: "Any change in an instrument which causes it to speak a different language in legal effect from that which it originally spoke—which changes the legal identity or character of the instrument, either in its terms or the relation of the parties to it—is a material change, or technical alteration, and such a change will invalidate the instrument against all parties not consenting to the change. Not only will an alteration vitiate the instrument as between the immediate parties, but also as against a bona fide holder or indorsee without notice; and the latter can acquire no right or title other than that of the person under whom he claims." See cases cited by state under note 82; also, 2 Am. & Eng. Enc. Law (2d Ed.) p. 193, and cases cited; also, the opinion of this court in *Bank* v. *Laughlin,* 4 N. D. 391, 61 N. W. Rep. 473, and § 3937, Rev. Codes 1899, which is declaratory of the rule as above stated. As was said in *Bank* v. *Laughlin,* supra, "After such alteration, the paper is no longer the same paper as that sent out by those who executed and delivered the original instrument." Counsel for plaintiff frankly admits that under the rule as above stated the plaintiff cannot recover in this action. Their sole contention is that upon the facts of this case the defendants are estopped from denying the execution of the note in the form in which it was purchased by the plaintiff. It is claimed that the defendants were guilty of gross negligence, both in fact and in law, in signing the instrument which was afterwards converted into the note sued upon. While it is a well-settled rule that a material and unauthorized alteration of a negotiable note renders it void even as against an indorsee in due course, it is equally well-settled that there are exceptions to this rule, under which the maker may be prevented from relying upon the alteration for the purpose of defeating a recovery. The most familiar exception as applied to negotiable notes, covers all of these cases where parties have either signed skeleton notes, or notes only partially filled out, and the same have thereafter been filled out, and transferred to an innocent holder. The cases are exceedingly numerous where notes so altered have been enforced at the suit of innocent indorsees notwithstanding the fact that they were materially different from the instrument signed by the maker. The doctrine upon which a majority of these cases rests.

is that the maker of the note, by signing it while it contains blanks, and knowing that it may be given currency as commercial paper, impliedly, assents that the blanks may be filled out; that is, the law implies his consent to the alteration from the fact of his signing it with blanks therein. In that view the person filling the blanks is held to be the agent of the maker. The alteration, in this view, is made with the consent of the maker of the note, and the contract therefore is his contract. Other cases place the liability of the makers upon the ground of estoppel by negligence. The limitations upon this implied power to fill blanks is well stated by Judge Dillon in the article before refrred to, on pages 159 and 161, as follows: "It may be laid down generally that if one signs an instrument containing blanks he must be understood to intrust it to the person to whom it is so delivered to be filled up properly, according to the agreement between the parties; and when so filled the instrument is as good as if originally executed in complete form; and, if one signs or indorses a bill containing blanks to be filled, the delivery of such an instrument is an authority to fill up the blanks in conformity with the original instrument. * * * The implied authority to fill blanks is confined to such insertions as are necessary to make the instrument perfect according to its nature, frame, and intended use, There is no inference of authority to make any additions to the terms of the instrument, or to make a new instrument by erasing what is written or printed, or by filling blanks with stipulations repugnant to the plainly expressed intention of the paper as shown by its written or printed terms; and such an addition or alteration will avoid the instrument, even in the hands of an innocent holder, unless the person authorized to fill the blanks may be considered as a stranger with reference to any other changes which he may make." See cases cited under notes 74, 75, 82, and 83.

We may now inquire whether, upon the facts in this case, the defendants are liable upon the note in suit under the doctrine of implied authority or estoppel by negligence. We are agreed that they are not liable. It certainly cannot be claimed that the plaintiff has any right of recovery upon the note sued upon which depends upon the doctrine of implied authority. The instrument sued upon is a negotiable promissory note. The instrument signed by the defendants was not a negotiable note in form, with unfilled blanks, but, on the contrary, was a stock contract, in which the signers agreed to associate themselves together to buy a horse. Applying the doctrine of implied authority to the instrument signed by the defendants, it is apparent that it would extend only to filling the blanks in the instrument according to the purport and effect of the contract as contained within its four corners. Had all of the blanks been filled, it would still be a contract, nonnegotiable and conditional, and the promises to pay therein contained would be unenforceable save upon the condition of an actual association being formed and an actual purchase of a stallion. The instrument

was not so filled out, but, on the contrary, the contract was cut in two, and an entirely different instrument was created. As we have seen, the doctrine of implied authority does not extend to the creation of different instruments. We find no basis of fact in this case to conclude that there was any implied authoriy in Cooper or his agent to convert the contract signed by the defendants into the note here sued upon. Neither are we able to find that the defendants were negligent in signing the contract as they did. The cases are numerous where parties who have unwittingly signed negotiable notes have been held liable to good-faith purchasers because of their negligence and carelessness in not ascertaining the nature of the instrument signed by them. That, however, is not this case. In this case the parties signed the instrument knowingly. But they did not sign a skeleton note, or a note containing blanks, but an entirely different instrument. They were able to read the contract and they read it before signing it, and understood its general nature. We are not able to see wherein they were negligent in signing it. The most that can be said is that they were negligent in not having the blanks filled out; but, as we have seen, they were not bound to assume that the instrument would or could be filled out in any other way than according to its general terms and purport. We do not think the contract signed by the defendants presented such an appearance as to make the mere fact of their signing the paper an act of carelessness. The loss resulting from the forgery must fall upon the purchaser of the forged paper, and not upon the innocent makers of the stock contract. The defendants had as good a right to rest upon the presumption that the contract which they signed would not be converted by forgery into a negotiable promissory note as the plaintiff had to presume that the note which he purchased was not forged. Parties taking such paper must be considered as taking it at their own risk, so far as the question of forgery is concerned, and as trusting to the character and credit of those from whom they receive it and of the intermediate holders. *Holmes* v. *Trumper,* 22 Mich. 427, 7 Am. Rep. 661; *Bank.* v. *Clark,* (Iowa) 1 N. W. Rep. 491, 33 Am. Rep. 129; *Bank* v. *Stowell,* 123 Mass. 196, 25 Am. Rep. 67; *Gerrish* v. *Glines,* 56 N. H. 9; *Kellogg* v. *Steiner,* 29 Wis. 626; *Scofield* v. *Ford,* 56 Ia. 370, 9 N. W. Rep. 309; *Benedict* v. *Cowden,* 49 N. Y. 396, 10 Am. Rep. 382; *Searles* v. *Seipp,* 6 S. D. 472, 61 N. W. Rep. 804. It follows from what we have said that the trial court correctly held that the plaintiff is not entitled to recover inthis action.

The judgment of the district court is affirmed. All concur.