MERCHANTS' NATIONAL BANK OF WIMBLEDON, NORTH DAKOTA, a Corporation, Appellant, v. GEORGE E. BRAST-RUP, Respondent.

(168 N. W. 42.)

**Instrument — containing blank spaces — signing of — person to whom delivered — intrusted with power to fill spaces according to agreement — presumption — completed form.**

1. If one signs an instrument containing blanks, he must be understood to intrust it to the person to whom it is so delivered to be properly filled in, according to the agreement between the parties, and when so filled in the instrument is as good as if originally executed in complete form.

**Writings — blanks in — not under seal — may be filled in — instrument completed — oral authority sufficient.**

2. Blanks of any description, left in writings not under seal, may, except as prohibited by the Statute of Frauds, be filled in in pursuance of mere parol authority.

**Written instruments — alterations in — increasing liability of maker — explanation required only in such cases.**

3. It is as a general rule only incumbent upon a plaintiff to explain an alteration in an instrument which increases the liability of the defendant, and not one which reduces it.

**Promissory note — interest at stated rate till maturity — note bears legal rate — writing same in — justifiable — where rate less than stated rate till maturity.**

4. A note which contains the clause, "with interest payable annually at the rate of twelve per cent per annum to maturity," will be presumed to bear the legal noncontractual rate of interest, which in North Dakota is 7 per cent, and

---

NOTE.—For authorities passing on the question of liability of maker, acceptor, or indorser of commercial paper where blanks therein are filled up contrary to his instructions, see note in 5 B. R. C. 702.

in such a case the holder would be justified in writing the word or figure "seven" therein and above the word "twelve," which has been crossed out.

**Promissory note — alteration — material — fraudulent breach of trust — forgery — clear and convincing evidence required — instructions refusing. — error.**

5. A charge that a note which when sued upon contains the clause, "with interest payable annually at the rate of twelve per cent per annum to maturity," when originally signed and delivered had the twelve merely stricken out and no figures inserted above, and that the agreement between the parties was either that no interest should be charged or at the most the legal rate of 7 per cent, is a charge of a fraudulent breach of trust, which practically amounts to forgery; and in such a case it is error to refuse to instruct the jury that "where a party seeks to avoid an instrument on the ground of an alteration, he must make out his case by clear and convincing testimony sufficient to convince the mind of a reasonably prudent and cautious person, especially when the change will amount to a crime," and that "the presumption of innocence and fair dealing among men is so persuasive that a situation which violates it calls for evidence of a more clear and satisfactory character than one that does not involve moral turpitude or the commission of a crime or offense."

Opinion filed May 6, 1918.   Rehearing denied May 28, 1918.


Action on a promissory note.

Defense of a material alteration.

Appeal from the District Court of Stutsman County, Honorable *J. A. Coffey,* Judge.

Judgment for defendant.   Plaintiff appeals.

Reversed.

*John A. Jorgenson,* for appellant.

"Where a party seeks to avoid an instrument on the ground of an alteration, he must make out his case by clear and convincing testimony." Riley v. Riley, 9 N. D. 580, 84 N. W. 347; Rosenberg v. Jett, 72 Fed. 90; Brunton v. Ditto, 51 Colo. 178, 117 Pac. 156; Tanner v. Newton, 254 Ill. 432, 98 N. E. 929; Smith v. Parker (Tenn.) Ch. 49 S. W. 285; Dickenson v. Ramsey, 115 Va. 521, 79 S. E. 1025; Hecht v. Shenners, 126 Wis. 27, 105 N. W. 309; Maldaner v. Smith (Wis.) 78 N. W. 141.

"Blanks of any description left in writings not under seal may, except so far as prohibited by the Statute of Frauds, be filled in pursuance of

mere parol authority." Yocum v. Barnes, 8 B. Mon. 496; Porter v. Hardy, 10 N. D. 551, 556, 88 N. W. 458; Violett v. Patton, 5 Cranch, 142, 3 L. ed. 61; Shows v. Steimer, 175 Ala. 363, 57 So. 700; White v. Alward, 35 Ill. App. 195; Hut v. Adams, 6 Mass. 519; Roe v. Town Mut. F. Co. 78 Mo. App. 452; New England v. Brown, 59 Mo. App. 461; Ex parte Edcker, 6 Cow. 59; Bugger v. Cresswell (Pa.) 12 Atl. 829; Baldwin v. Haskell (Tex. Civ. App.) 124 S. W. 443; Re Tahit Co. L. R. 17 Eq. 273.

"Where one signs or indorses a bill or note containing blanks to be filled, the delivery of such an instrument is an authority to fill up the blanks in conformity with the original agreement." Cox v. Alexander, 30 Or. 438, 46 Pac. 794; Stahl v. Berger, 10 Serg. & R. 170, 13 Am. Dec. 666; Lance v. Calvert, 21 Pa. Super. 102; Fitch v. Kelly, 44 U. C. Q. B. 578; Porter v. Hardy, 10 N. D. 551; South Berwick v. Huntress, 53 Me. 89, 87 Am. Dec. 535; Smith v. Crooker, 5 Mass. 538; New England v. Brown, 59 Mo. App. 461; Montgomery v. Dresher, 38 L.R.A.(N.S.) 423 and note; 90 Neb. 632, 134 N. W. 251.

"The filling of blanks is a question of authority, and not of alteration of a completed instrument." Bolter v. Koxlowski, 112 Ill. App. 13, affirmed in 211 Ill. 79, 71 N. E. 858; Wadron v. Young, 9 Heisk. 777; White v. Alward, 35 Ill. App. 195; Montgomery v. Dresher, 90 Neb. 632, 38 L.R.A.(N.S.) 423, 134 N. W. 251; Visher v. Webster, 8 Cal. 109; 7 Cow. 337; Story, P. N. § 110; Johnson v. Blasdale, 1 Smedes & M. 17, 40 Am. Dec. 85; Chitty, Bills, 33; Violett v. Patton, 5 Cranch, 151; Russell v. Langstaffe, 2 Dougl. 514; 2 Kent, 617; Storey, Agency, 158; Wintle v. Crowther, 1 Cromp. & J. Ex. 316; Fisher v. Dennis, 6 Cal. 577; Holmes v. Trumper, 22 Mich. 430.

The instrument here furnishes no evidence that would create even a suspicion of fraud or wrongdoing. The writing, the ink, and all such matters, are proper to consider. Maldaner v. Smith (Wis.) 78 N. W. 140; Messenger v. St. Paul R. Co. 77 Minn. 34, 79 N. W. 583.

A statute authorizing a new trial for insufficient evidence confers power to grant a new trial where the verdict is against the weight of the evidence. McDonald v. Walter, 40 N. Y. 551; Inland Elec. Co. v. Hall, 124 U. S. 121, 31 L. ed. 1022, 8 Sup. Ct. Rep. 397.

*Knauf & Knauf,* for respondent.

When there are suspicious circumstances tending to discredit the in-

strument apparent upon its face, or from extrinsic facts, the burden of removing such suspicion is on the party seeking the use of the instrument. Jackson v. Osborn, 2 Wend. 555, 20 Am. Dec. 651; Clark v. Eckstein, 22 Pac. 507, 62 Am. Dec. 307.

Plaintiff having offered the altered note in evidence, it was incumbent on it to produce the evidence tending to show the alteration to have been made at a proper time or with the consent of the defendant. Greenl. Ev. 564; Smith v. United States, 69 U. S. 17 L. ed. 788–791; Inglish v. Breneman, 41 Am. Dec. 96; Courcamp v. Weber, 39 Neb. 533; Bewcomb v. Presbrey, 8 Met. 406; United States v. Linn, 1 How. 111; Page v. Danaher, 43 Wis. 221.

There were no blank spaces in this note to be filled. There was a plain, clear alteration,—the numeral "10" having been written in. Porter v. Hardy, 10 N. D. 551.

There is a vast difference between filling in blank spaces left in a delivered instrument, and changing or altering a completed instrument, such as was the one in the case at bar. Shows v. Steiner, 57 So. 700.

Bruce, Ch. J. This is an action on a promissory note. The defense is a material alteration, and the answer alleges that "said sum was to bear no interest until after maturity, and that after the defendant had signed, executed, and delivered the said promissory note, the same was materially changed and altered by plaintiff, or its agent, to bear 10 per cent interest before maturity."

Judgment was rendered for the defendant and the plaintiff appeals. The errors which are assigned relate entirely to the instructions.

The portion of the note over which the controversy rages reads as follows:

"With interest payable annually at the rate of ~~twelve~~ <sup>10</sup> per cent per annum to maturity."

The printed word "twelve" is crossed out and the "figure "10" written above.

The defendant claims that the "twelve" was crossed out when he signed and delivered the note, and that nothing was inserted in its place.

The note was made payable to the Merchants' National Bank of Wim-

bledon. It was sent to the Stutsman County Bank of Courtney for execution. The cashier of the bank at Courtney, who obtained this execution, did not testify. The cashier of the Merchants' National Bank of Wimbledom testified that the note was in its present condition at the time it was received by him from the Stutsman County Bank. There is no direct testimony as to who drew the note in the first instance, as to its original form, nor as to whose writing the written portions are in. There is, however, testimony to the effect that the note was given in payment for a team of horses which were bought from one Lilley in May, 1912, but was made, executed, and dated on December 24, and made payable to the Merchants' National Bank, which had a mortgage on the team.

Lilley also testified that the defendant had a conversation with him before the note was executed, and claimed he ought to have a reduction because one of the horses had become diseased, to which he, Lilley, replied that it was not his fault, "but before we will have any dispute about this team, you go to the bank and make out a note now, and it will not have interest for last summer."

This conversation is testified to by Lilley as having been had in the fall, the horse having been sold in the spring. The defendant testifies that he did have a conversation shortly before the execution of the note, *but nothing was said at all about the interest.* The note was executed on the 24th day of December, 1912, and interest is merely claimed from that date. The defendant further testifies that at the time the note was executed the twelve was stricken out, and that the ten was not written over it; also, that he saw it twice after that time and that the ten was not there early in the spring of 1913.

It is first maintained that the court should have instructed the jury that, by delivering the note to the plaintiff bank with the twelve crossed out, the defendant impliedly consented to the insertion of the figure "10."

It may be laid down generally that "if one signs an instrument containing blanks, he must be understood to intrust it to the person to whom it is so delivered to be filled up properly according to the agreement between the parties, and when so filled the instrument is as good as if originally executed in complete form." Porter v. Hardy,

10 N. D. 551, 556, 88 N. W. 458; Re Tahite Co. L. R. 17 Eq. 273, 43 L. J. Ch. N. S. 425, 22 Week. Rep. 815.

It is also true that "blanks of any description, left in writings not under seal, may, except so far as prohibited by the Statute of Frauds, be filled in pursuance of mere parol authority." Yocum v. Barnes, 8 B. Mon. 496.

There is, however, in the record which is before us and outside of the note itself, no proof whatever of any agreement for the payment of 10 per cent interest, and though 10 per cent could, at the time of the execution of the note, have been contracted for, the legal rate, in the absence of such an agreement, was 7 per cent. Comp. Laws 1913, § 6072. There may therefore have been implied authority to insert the figure "7," but there was no implied authority to insert that of "10." Porter v. Hardy, supra; 2 Enc. L. P. 177; 2 Cyc. 164; Hoopes v. Collingwood, 10 Colo. 107, 3 Am. St. Rep. 565, 13 Pac. 909; Palmer v. Poor, 121 Ind. 135, 6 L.R.A. 469, 22 N. E. 984; Holmes v. Trumper, 22 Mich. 430, 7 Am. Rep. 661.

It is next urged that the trial court failed to instruct the jury, at the request of the plaintiff, that "where a party seeks to avoid an instrument on the ground of an alteration he must make out his case by clear and convincing testimony sufficient to convince the mind of a reasonably prudent and cautious person, especially where the change will amount to a crime;" and that "the presumption of innocence and fair dealing among men is so persuasive that a situation which violates it calls for evidence of a more clear and satisfactory character than one that does not involve moral turpitude or the commission of a crime or offense."

We are of the opinion that the court erred in not giving these instructions. If the 10 was written in without authority, either a forgery was committed or there was a breach of trust so closely akin thereto that moral turpitude was involved. The contention of the defendant is, indeed, so improbable that great care should have been exercised in the submission of the case to the jury.

There was little if anything on the face of the note which rendered it subject to suspicion. The word "twelve" had been stricken out and a lesser number inserted, and this was to the detriment rather than benefit of the plaintiff. As a rule it is only incumbent upon the plain-

tiff to explain an alteration which increases the liability of the defendant, and not one which reduces it. Greenl. Ev. 16th ed. § 564. The claim of the defendant was really that the plaintiff should have stricken out the whole paragraph as to interest. He does not pretend for a moment that the paragraph, with the exception of the figure "10," was not in when he signed the instrument, or that there was any agreement as to interest. He shows no reason whatever why he should not have been held liable in any event for 7 per cent.

The testimony of Lilley, too, is positive that the agreement was merely that the defendant should be excused from paying interest until the fall when the note was executed, and, as the note did not bear date until December 24, this agreement, if made, was complied with. The defendant does not deny having had a conversation with Lilley, nor does he deny having purchased the horse in the spring, nor does he claim that the purchase price has been paid. He merely denies that at the time of the conversation anything was said as to the interest. We have then a note which on its face excites no suspicion, and opposed to it a statement that after the twelve was properly crossed out, the ten was wrongfully inserted in its place. It is claimed by the defendant that the intention was that no interest at all should be charged before the maturity, and, yet, even if nothing further had been written or done, the note would still have read, "with interest payable annually at the rate of twelve per cent per annum to maturity and twelve per cent per annum after maturity until paid."

If left in the condition contended for by the defendant, the holder would clearly have had the right to insert the words "seven per cent," above the word "twelve," which had been stricken out, as without this insertion the note would have drawn that interest. The contention of the defendant lacks probability. He also charges forgery, or a fraudulent breach of trust, which would practically amount to forgery. The instructions should have been given. Maldaner v. Smith, 102 (Wis.) 30, 78 N. W. 141; Brunton v. Ditto, 51 Colo. 178, 117 Pac. 156; Riley v. Riley, 9 N. D. 580, 84 N. W. 347.

The judgment of the District Court is reversed and a new trial is ordered.

39 N. D.—40.

ROBINSON, J. (concurring). The plaintiff brings this action to recover from defendant on a promissory note for $300 and interest from December, 1912. In May of that year Lilley sold and delivered a team of horses to the defendant on his agreement to pay or give his note for the same to the bank which had a mortgage on the team. Defendant put off making payment or giving a note until December, when he claims some reduction from the price because one of the horses became diseased. The seller insisted that he was not at fault, and that defendant should go and make the note, which would give him a reduction of interest from May until December. The defendant went to Stutsman County Bank at Courtenay, and then signed the note, which was mailed to the plaintiff. He testifies that when he signed the note it was in this form:

No.................... , Wimbledon, N. D., Dec. 24, 1912.

One year after date, for value received, I promise to pay to the Merchants National Bank, of Wimbledon, N. D., or order, three hundred dollars, $300, at the Merchants National Bank in Wimbledon, N. D., with interest payable annually at the rate of......per cent per annum to maturity, and twelve per cent per annum after maturity until paid. Interest not paid at maturity shall bear interest at the rate of twelve per cent per annum until paid.

He testifies that when he signed the note the word "twelve" was stricken out, and in place of it there was no figure "ten (10)" which now appears for the per cent. He testifies that in the fall of 1913, he saw the note at the bank in Wimbledon, and the figure "10" had not been inserted, and that he never gave any permission or authority to insert the figure "10." He does not testify to any agreement with the seller of the horses or with the bank that he was not to pay interest on the note until it became due. He does not in any way contradict the testimony showing that he was to make settlement for the horses at the time of delivery, and that by putting off settlement he obtained the use of the horses during the whole season of 1912 without paying anything. Certain it is there was no bargain and no thought in the mind of defendant himself or of any person that he should have the use of the horses for a second season without paying interest, and

now it seems that he has had the use of the horses for five or six years without paying or offering to pay a dollar, and, of course, that does not mark him as an honest and truthful man. Truth and honesty are virtues which go together.

Mr. Beers, cashier of the plaintiff bank, testifies:

The note came to the bank by mail. I was there when it was received and it is the same now as when it was received.

Q. Are you certain it is the same as when received?

A. I am very certain.

Hence, the weak and improbable testimony of defendant is flatly contradicted by that of the cashier, as well as by the facts and circumstances and the presumptions in favor of the note. His position is the same as if he had gone to the bank and borrowed $300 and then refused payment on the ground that when he signed the note the printed word "twelve" was crossed out and in lieu thereof no other word or figure was inserted to indicate the rate of interest. Now in all blank promissory notes used at the banks the printed rate of interest is 10 per cent, but the 10 is usually crossed out and a lower rate inserted.

If the maker of a note may avoid payment by swearing that at the time of signing the notes the printed 10 was crossed out and no other figure inserted, while the banker swears to the contrary, then nearly all persons may safely refuse to pay their bank notes. In this case after crossing out the twelve, the note contains a promise to pay $300, "with interest payable annually at the rate of......per cent per annum till due."

Now, all that is said concerning the payment of interest should have been crossed out if the defendant was not to pay any rate of interest. If the defendant signed the note, leaving the rate blank and saying nothing concerning it, he thereby authorized the bank to insert the usual interest rate. And such insertion was not an alteration of the note. The note in question is fair on its face, and all the facts and presumptions are in its favor. Banks are not loaning money or taking notes due in a year without interest.

In this case defendant was legally and morally bound to pay interest on the price of the horses from the date of the note, and if he

thought to put off on the bank a note payable in a year without interest then he was guilty of dishonesty and fraud.

On these matters and in regard to the burden of proof the instructions of the court were clearly erroneous. The court also erred in refusing to give the jury the following special instructions, which were duly requested:

"The presumption of innocence and fair dealing among men is so persuasive that a situation which violates it calls for evidence of a more clear and satisfactory character than one that does not involve moral turpitude or the commission of a criminal offense.

"Where a party seeks to avoid an instrument on the ground of an alteration, he must make out his case by clear and convincing testimony, sufficient to convince the mind of a reasonably prudent and cautious person, especially when the change would amount to a crime."

In this case when the answer raised a question concerning the alteration of the note, the plaintiff should have added to his complaint a cause of action counting on the original purchase price of the team.