## J. R. WATKINS Co. *v.* FORNEA *et al.*[*]

(Division B. May 26, 1924.)

[100 So. 185. No. 24101.]

.ALTERATION OF INSTRUMENTS. *Alteration which enlarges scope of instrument as means of evidence is material alteration.*

An alteration which enlarges the scope of an instrument as a means of evidence is material.

[*]Headnote 1. Alteration of Instruments, 2 C. J., section 2.

APPEAL from circuit court of Pearl River county. HON. J. Q. LANGSTON, Judge.

Suit by the J. R. Watkins Company against W. J. Fornea, H. S. Stewart, and another. From judgment for named defendants, plaintiff appeals. Affirmed.

*Wm. A. Shipman,* for appellant.

If it were true in fact that at the time the contract was executed by the sureties it did not contain the words and figures: "Thirteen hundred sixty-two and 04/100," and all the surrounding circumstances contradict it— yet are they estopped to deny their liability, after the blank left therein was filled in with the proper amount. The rule is stated in 21 R. C. L. 969-970.

The principle is well settled in Mississippi that signing and delivering an instrument with blanks to be afterwards filled, gives an unlimited authority to insert any sum. *Hall* v. *Bank of Commerce,* 30 Am. Dec. 685; *Roberts* v.

*Adones,* 33 Am. Dec. 291; *Herbert* v. *Huie,* 34 Am. Dec. 755; *Johnson* v. *Blasdale,* 1 S. & M. (Miss.) 17; *Hemphill* v. *Bank of Alabama,* 6 S. & M. 49; *Torrey* v. *Fisk,* 10 S. & M. 595; *Davis* v. *Lee,* 26 Miss. 509; *Simmons* v. *Atkinson,* 69 Miss. 865, 12 So. 263; *Landis* v. *Neal,* 51 So. 898; *Bank* v. *Merkel,* 53 So. 350. See, also, *Benton County Savings Bank* v. *Boddicker,* 105 Iowa, 548, 75 N. W. 632, 67 Am. St. R. 310, 45 L. R. A. 321. Nor is this rule affected by the holding of the court in *State* v. *Allen,* 69 Miss. 508.

"If a party to an instrument intrust it to another for use, with blanks not filled, such instrument so delivered carries on its face an implied authority to fill up the blanks necessary to perfect the same with matter in general conformity to the character of the instrument." 2 C. J. 1243, Note 66. See, also, *Davis* v. *Lee,* 26 Miss. 505, 59 Am. Dec 267; *Hemphill* v. *Bank of Alabama,* 6 S. & M. 44; *Barnes* v. *Reynolds,* 4 How. (Miss.) 114; *Torrey* v. *Fisk,* 10 S. & M. (Miss.) 375; *Burgess* v. *Blake,* 87 Am. St. Rep. 107; *Friend* v. *Yahr,* 110 Am. St. Rep. 924, 126 Wis. 291; *Rollins* v. *Ebb,* 138 N. C. 140, 50 S. E. 577; 7 Cyc. 593, and notes 60-62.

Under the contract in *McConnon & Co.* v. *Richardson,* 117 Miss. 345, 78 So. 292 (decided March, 1918), which is almost identical with that between the parties to the case at bar, the supreme court held, that the agreement was an original promise on the part of the guarantors or sureties to answer for the debt or default of the principal debtor, and that their liability was exactly the same as his. That the promise of the sureties was joint and several with their principal.

While every surrounding circumstance goes to show that the amount "thirteen hundred sixty-two and 04/100" dollars was written in the contract before its execution by the defendants, yet, for the purpose of this argument, the appellant may concede that the blank was filled in after the execution, and they are still estopped to deny

the validity of the instrument under the doctrine of ratification.

*Parker & Shivers,* for appellees.

It is the contention of appellees that by this guaranty they only obligated themselves to pay for such goods, etc., as was sold to Tom Rester after December 1, 1919, and to pay such indebtedness as is now written in said contract. Therefore, if nothing was written in the blank space, appellees had a right to reasonably assume that no indebtedness was due, at that time, by Tom Rester and, therefore, when they signed the said agreement, they did not obligate themselves to pay any indebtedness then due, because the amount was not written in the said blank space.

The evidence shows that the contract in question was prepared by the appellant and such blanks as were filled in were filled in by the appellant, and the testimony further shows that all of the blanks in the contract were filled in, except the blank in which was written the words, ''thirteen hundred sixty-two & 04/100,'' which appellees claim was written therein after they signed it and after it was returned to appellant, and which appellant claims was written in before it was mailed to Tom Rester and appellees, for their signatures.

Counsel for appellant in his brief argues that appellees are precluded by the words written in said blank space from questioning the fact that he was so indebted, and, of course, he is correct in that contention. Therefore, if the writing of the said words in the blank space did not increase the liability of appellees (which we do not concede, but contend that it does increase the liability), still the scope of the instrument would be enlarged as a means of evidence and, therefore, would fall squarely within the holding of this court in the case of *Bank of Lauderdale, et al.* v. *Cole,* 111 Miss. 39, 71 So. 260.

Appellant used the instrument, which the jury in this case found to have been so altered, as evidence of a stated account between the parties and brought suit for the said amount as on a stated account, and as heretofore set out, appellant even now in its brief claims that appellees by reason of the fact of said amount being in the contract, are foreclosed from questioning the sum as a debt due by Tom Rester to the appellant, and as being guaranteed therefore by them. Neither the case of *McConnon & Co.* v. *Hovland,* 194 N. W. 394, nor the case of *J. R. Watkins Company* v. *Powell,* 220 Pac. 585, are controlling, in our opinion, of the question involved in this suit.

While the case of *Watkins* v. *Powell, supra,* decided by the supreme court of Oklahoma, is a case as stated by counsel for appellee, very much like the case at bar, the court does not set out the entire contract, but says that the sureties bound themselves to pay all indebtedness due at the time the contract was made and all indebtedness that might be due at the time the contract should be terminated and, therefore, holds that since the proof shows that the indebtedness at the time the contract was made was nineteen hundred one dollars and nineteen cents and six hundred sixty-two dollars, and ninety-three cents at the time the same was terminated, the writing on the blank line the words "nineteen hundred one and 19/100" does not increase or decrease the liability of the defendants and does not change the operation and affect the contract. ·

Counsel for appellant spends a large part of his brief in arguing to this court that even if the writing of the words and figures in the blank spaces in the contract is a material alteration, still when it was delivered to appellants with blank in the contract they had implied authority to fill in all blanks and cites numerous cases and authorities to bear out this contention. The rule cited by him from 21 R. C. L. 969, and 970, is not in conflict with our contention here, because this is not a case where the principal filled in the blank and delivered it to the

obligee and thereby the obligee was prejudiced, but in this instance if the blank was filled in, it was filled in by the obligee itself. Not only that, but the contract was prepared by the obligee, and, if the contention of appellee is correct, it was purposely left blank and purposely filled in by the obligee and we are satisfied that our court will not allow this patent medicine concern to get by on any such flimsy proposition as this.

Appellant cites the cases of *Johnson* v. *Blasdale*, 1 S. & M. 17; *Torry* v. *Fisk*, 10 S. & M. 595; *Davis* v. *Lee*. 26 Miss. 509, and *Simmons* v. *Adkinson*, 69 Miss. 865, 12 So. 263, as supporting his contention that when a paper is delivered with blanks therein, that the party to whom it is delivered has implied authority to fill in the blanks. In the earlier cases cited there were innocent purchasers involved and the blanks had not been filled in by the holder of the paper, but had been filled in before delivery to the holder of the paper. No such state of facts exists in this case.

Sykes, P. J., delivered the opinion of the court.

The appellant, a foreign corporation, as plaintiff, instituted this suit against Tom Rester as principal, and H. S. Stewart and W. J. Fornea as sureties, for the balance of an account due by Rester to appellant. The principal in the contract, Rester, made no defense. Stewart and Fornea among other things pleaded a material alteration in the contract made by Watkins without their knowledge and consent. The contract upon which this suit is based was attached to the declaration and reads as follows:

"This agreement, made at Winona, Minnesota, U. S. A., this 1st day of December, A. D. 1919, between the J. R. Watkins Company, a Minnesota corporation, hereinafter called the company, party of the first part, and Tom Rester of Poplarville, Mississippi, party of the second part witnesseth:

"That for and in consideration of the promises and agreements hereinafter contained, to be kept and performed by the party of the second part, the company promises and agrees to sell and deliver to the party of the second part free on board cars at Winona, Minnesota, or at its option, at any of its regular places of shipment, any and all goods and other articles manufactured or sold, or which may hereafter be manufactured or sold by it, unless prevented by fire, insurrection, invasion, strikes or other causes, at the usual and customary wholesale prices as the party of the second part may reasonably require for sale by him from time to time, from the date hereof, until the 1st day of March, 1921, as hereinafter provided, in the following described territory, except the incorporated municipalities therein located, to-wit, in the state of Mississippi, in Pearl River county; in consideration of the sale and delivery to him, as vendee, f. o. b. cars at Winona, Minnesota, or other regular shipping point as above mentioned, by said company, of the goods and other articles manufactured or sold by it, in such reasonable quantities as he may require for sale in said territory as herein provided, upon the terms herein expressed, the party of second part promises and agrees as soon as practicable after said goods and other articles are received, to make a thorough and personal canvass of said territory at least four times a year, at his own cost and expense, and to provide a proper outfit therefor, and to sell said goods or so much thereof as possible, and at all times during said term said party of the second part agrees to keep a complete record of all goods disposed of by him and on hand and to make to said company complete regular weekly written reports of the sales and collections, which reports, however, or any of them, may be waived by said company, and also to report the goods on hand and outstanding accounts when requested by said company so to do.

"And the party of the second part promises and agrees to pay to said company at Winona, Minnesota, the whole-

sale prices aforesaid for the goods and other articles sold
to him from time to time, as herein provided, and the pre-
paid freight and express thereon, if any, during said
term, at the time and in the manner and in accordance
with the provisions of the weekly report blanks of said
company to be furnished to the party of the second part,
and at the termination of this agreement to pay the whole
amount therefor then remaining unpaid; or in cash, with-
in ten days from the date of invoice, with the understand-
ing that said company will allow a discount of three per
cent. from said wholesale prices on cash payments, pro-
vided full payment for all goods previously furnished
shall then have been made; but such payments, or any of
them, may be waived or extended by the said company
without notice to the sureties hereon and without preju-
dice to the rights or interests of said company, and if the
party of the second part shall not pay cash for said goods
and other articles so sold and delivered to him, and the
payments at the time and in the manner and in accord-
ance with said weekly report blanks, as aforesaid, are in-
sufficient to pay therefor, said company may in its discre-
tion, thereafter either limit the sales herein agreed to be
made, or discontinue the same until such indebtedness is
paid or reduced as said company may require; and at the
termination of this agreement the party of the second
part agrees to return by prepaid freight to said company
at Winona, Minnesota, or other point at which the same
were delivered, in as good condition as when delivered to
him, f. o. b. cars, all of the said goods undisposed of by
him, and the company agrees to receive such goods, if the
same are in such condition when received at Winona,
Minnesota, or other point at which they were delivered to
the party of the second part, f. o. b. cars, and pay or credit
the party of the second part therefor at the same prices
at which the same were sold and delivered, and if not in
such condition when so received by the company shall
make a reasonable charge for putting them in such con-
dition, if that can reasonably be done, and to deduct such

charge from the amount of the goods so returned, and pay or credit the party of the second part with the balance thereof, but no goods left by said second party with his customers, on time or trial, not paid for by them, or by them partially used and then returned to him, shall be returned to said company, or be paid for by it, or credited to the account of said second party.

"And it is mutually agreed between the parties hereto that the party of the second part shall pay all transportation charges on goods he so purchases and all expenses and obligations incurred in connection with the canvass and the sale of said goods, and shall have no power or authority to make any statement or representation or incur any debt, obligation or liability of any kind whatsoever, in the name of, or for, or on account of said company, and that said company shall in no way contribute to the expense of, nor share in the profits or losses on the sales of said goods by said second party, nor have any interest in the accounts due for goods sold by the said second party, and no printed, advertising or other matter of said company, sent to or distributed by said second party, shall be construed to change or modify the terms of this agreement, and that this is the complete, entire and only agreement between the said parties and that it shall not be varied, changed or modified in any respect except in writing executed by the parties hereto. The party of the second part hereby promises to pay said company, at Winona, Minnesota, during the term of this agreement, the indebtedness now due it for goods and other articles heretofore sold and delivered to him, as vendee f. o. b. cars at its regular places of shipment, payment of which is hereby extended during said term. The parties hereto, for the purpose of settling and determining the amount now due, hereby mutually agree that the said indebtedness now due said company is the sum of thirteen hundred, sixty-two and $\frac{54}{100}$ dollars, which sum the second party agrees to pay, and payment of which is extended as above provided. And it is further mutually

agreed that either of the parties hereto may terminate this agreement at any time by giving the other party notice thereof in writing by mail, and any indebtedness then owing from said second party to said company shall thereupon be and become immediately due and payable.

"In witness whereof, the party of the first part has caused these presents to be executed in its corporate name by its proper officer, and the said party of the second part has hereunto set his hand the day and year first above written.

THE J. R. WATKINS COMPANY,

"By PAUL WATKINS, PRESIDENT.

"Party of the second part sign here in ink:

TOM RESTER.

"In consideration of one dollar in hand paid by the J. R. Watkins Company, the receipt whereof is hereby acknowledged, and the execution of the foregoing agreement by said company, which we have read or heard read and hereby agree and assent to, and the sale and delivery by it to the party of the second part, as vendee, of its goods and other articles and the extension of the time of payment of the indebtedness due from him to said company, as therein provided, we, the undersigned sureties, do hereby waive notice of the acceptance of this agreement and diligence in bringing action against the second party, and jointly, severally and unconditionally promise and guarantee the full and complete payment of said indebtedness, the amount of which is now written in said agreement, and for said goods and other articles, and the prepaid freight and express charges thereon, at the time and place, and in the manner in said agreement provided.

"Sureties sign here, business men preferred. Sign in ink.

"First surety, H. W. STEWART.

"Occupation, Farming.

"P. O. address, Poplarville, Miss.

"Second surety, W. J. FORNEA.

"Occupation, Merchant.

"P. O. address, Derby.

"Witness sign here.
"Witness as to signature of first surety:
  "R. A. Ladner.
"Witness as to signature of second surety:
  "M. C. Tetron."

The alteration alleged to have been made in the contract was that the amount, one thousand, three hundred sixty-two dollars and four cents was filled in by appellant after the contract was executed by the principal and sureties. The testimony of the appellant was to the effect that this blank was filled in before the contract was sent to Rester for the signature of himself and sureties. The jury found in favor of the sureties, and judgment was accordingly entered in the circuit court in favor of these defendants. From which judgment this appeal is here prosecuted.

There was also an itemized account attached to the declaration which contains the following: "Balance brought forward in contract, one thousand three hundred and sixty-two dollars and four cents." Then follows an itemized account of goods purchased and unpaid for since the contract was executed.

The court below, on objection of defendants, excluded as testimony a contract of similar import executed a year before the one in question, and also some correspondence relating to this previous contract. The court was correct in doing so. This suit is based on the contract above quoted and not on any previous contract. Consequently any previous contract or correspondence about it would have no material bearing on the issues here presented.

It is also the contention of the appellant that as a matter of law there was no material alteration of this contract, even though the jury accepted the testimony of the defendants to the effect that the blank was filled in by the insertion of one thousand, three hundred and sixty-two dollars and four cents. It is contended, first, that the contract was not complete with this blank, and that, since it was not filled in by the principal and sureties before sign-

ing, there was an implied authority given the appellant to fill in this amount; second, that, since there is no dispute as to the amount then due by the principal to the appellant, and that the correct amount was inserted in this blank, then this in no wise altered or changed the liability of the parties and is therefore not a material alteration of the contract.

We cannot agree with either of these contentions of the appellant. By reference to the above contract it is seen that in the previous sentence to the one in which the blank appears the principal promises to pay the indebtedness now due for goods. The next sentence in which the blank is filled in attempts to state the account between the parties as owing at the time of the execution of the contract. Without the filling in of this blank there was a completed agreement to pay the account then owing, which amount was not an agreed or stated amount but would have to be proved by testimony; whereas when the blank is filled in this amount becomes a stated or agreed amount. According to the testimony of the sureties when they signed this contract the amount was left blank, but there was a complete contract or agreement on their part to pay whatever amount was then owed by the principal to the appellant. The contract was complete to this extent. And, since the blank was not filled in; they had the right to believe that this particular clause in the contract was not expected to be filled in and therefore not to be invoked.

Second. While it is true that the amount for which the sureties would have been liable under this contract had the blank not been filled in is exactly the same that it would have been had this amount been inserted in the original contract, yet it is equally true that this alteration in the contract "enlarges the scope of the instrument as a means of evidence." Without the filling in of this blank, in a suit based upon this contract, the appellant would have been called upon to prove the correctness of the account owing at the time of the execution of the contract.

But with this amount inserted this rule of evidence is changed, and this amount is agreed to as being correct in the contract.

This court has committed itself to the rule that an alteration which enlarges the scope of an instrument as a means of evidence is material. *Bank of Lauderdale* v. *Cole*, 111 Miss. 39, 71 So. 260. The authorities cited in the opinion in the Cole case have been carefully examined by us, and they sustain this doctrine.

Since this agreement or contract was materially altered, and the liability of these sureties is to be measured by this contract, it follows that the material alteration of it vitiates it, and the sureties are not liable thereon.

The judgment of the lower court is affirmed.

*Affirmed.*