# J. R. Watkins Co. *v.* Poag *et al.*

(Division B.  May 20, 1929.)

[122 So. 473.  No. 27924.]

*H. Holmes,* of Senatobia, and *Barbour & Henry,* of Yazoo City, for appellant.

*E. D. Dinkins,* of Senatobia, for appellees.

*Creekmore & Creekmore,* of Jackson, for appellees.

ETHRIDGE, P. J., delivered the opinion of the court.

The J. R. Watkins Company filed suit in the circuit court against W. M. Poag, S. A. Jones, and M. H. Thompson, sureties on a contract made between J. R. Watkins Company and J. C. King, by the terms of which King was to buy certain preparations manufactured by the J. R. Watkins Company to be delivered to said King f. o. b. cars Winona, Minn., or at such other point as the company might establish as the place for delivery. The contract provided that the seller would have no rights in the goods and preparations sold, but that such goods would actually belong to the purchaser absolutely, and said contract also provided for sureties to sign the same, guaranteeing the payment of all accounts during the life of the contract by King, and the payment by King to the J. R. Watkins Company of six hundred sixty dollars and sixteen cents. One clause of said contract reads as follows:

"And it is mutually agreed between the parties hereto that the party of the second part shall pay all transportation charges on goods he so purchases and all expenses and obligations incurred in connection with the sale of said goods, and shall have no power or authority to make any statement or representation or to incur any debt, obligation or liability of any kind whatsoever, in the name of, or for, or on account of said Company, and that said Company shall in no way contribute to the expense of, nor share in the profits or losses on the sales of said goods by said second party; nor have any interest in the accounts due for goods sold by the said second party; and no printed, advertising or other matter of said Company, sent to or distributed by said second party, shall be construed to direct or control the sale or other disposition of said goods, or to change or modify the terms of this agreement; and that this is the complete, entire and only agreement between the said parties, and that it shall not be varied, changed or modified in any respect except in writing executed by the parties hereto. The party of the second part hereby promises to pay said Company at Winona, Minnesota, from time to time, during the term of this agreement, in amounts satisfactory to said Company the indebtedness now due for goods and other articles heretofore sold and delivered to him as vendee, and at the expiration or termination of this agreement, agrees to pay any balance thereof then remaining unpaid, payment of which indebtedness is hereby so extended. The parties hereto, for the purpose of settling and determining the amount now due, hereby mutually agree that the said indebtedness now due said Company is the sum of six hundred sixty dollars and sixteen cents which sum the second party agrees to pay, and said Company agrees to receive, and payment of which is extended as above provided. And it is further mutually agreed that either of the parties hereto may terminate this agreement at any time by giving the other party notice

thereof in writing by mail and any indebtedness then owing by either party to the other shall thereupon be and become immediately due and payable."

There was a surety clause to said contract reading as follows:

"In consideration of one dollar to us in hand paid by The J. R. Watkins Company, receipt thereof is hereby acknowledged, and the execution of the foregoing agreement which we have read or heard read, and hereby agree and assent to, and the sale and delivery by it to the party of the second part as vendee of goods and other articles, and the extension of the time of payment of the indebtedness now due from him to said Company as therein provided, we, the undersigned sureties, do hereby waive notice of the acceptance of this agreement and diligence in bringing action against said second party, and jointly, severally and unconditionally promise, agree and guarantee the full and complete payment of said indebtedness, the amount of which is now written in said agreement, or if not, we hereby expressly authorize the amount of said indebtedness to be written therein, and jointly, severally and unconditionally promise to pay for said goods and other articles, and the prepaid freight, express or postal charge thereon, at the time and place, and in the manner in said agreement provided."

This contract was signed by each of the defendants, and the witnesses, and the principal, King, and suit was brought in the court below for seven hundred seventy-four dollars and ninety-seven cents representing the six hundred sixty dollars and sixteen cents and additional amounts purchased by King from the plaintiff. The sureties were procured by King, and after the signing, King sent it to the office of the J. R. Watkins Company at Winona, Minn., and they approved and accepted the contract and sent notice thereof to the several sureties who signed the contract. On the back of the contract

was a reference as to the responsibility of S. A. Jones and W. M. Poag, signed by others.

The general issue was pleaded, and also that the contract signed had been altered by writing therein "six hundred sixty dollars and sixteen cents," and that King had represented to appellees that at the time they signed the contract he did not owe the company anything in the way of past indebtedness.

The testimony on behalf of appellant was to the effect that the six hundred sixty dollars and sixteen cents was written in the contract by the plaintiff at its office in Winona, Minn., before the contract was sent out, and that it was, consequently, in the contract at the time it was executed by King and the sureties.

The defendants each testified that the amount was not in the contract at the time they signed it, and that King represented to them that he had settled with the company for all amounts due at said time, and that these defendants would only be responsible under this contract for such articles as should be thereafter purchased.

G. D. Martin, assistant cashier of the People's Bank of Senatobia, and W. G. Cook, an officer of said bank, who certified to the financial responsibility of the sureties, testified that the sum was in the contract at the time King presented it to them to sign. Cook testified that King asked him to sign as surety, but that, seeing that six hundred sixty dollars and sixteen cents was due under the contract, he declined to do so, and Martin testified that when the contract was left at the bank for Cook to sign, or with the request that he sign it, he noticed it and saw that something over six hundred dollars was due, and his attention was attracted to this because King had been conducting business, buying from the J. R. Watkins Company prior thereto, and the fact that he owed that sum attracted the witness' attention.

The case was submitted to the circuit judge, who found for the defendants. It appears to have been the theory of the circuit judge that the contract was altered by writing six hundred sixty dollars and sixteen cents therein. This court, in the case of *Watkins Co.* v. *Fornea,* 135 Miss. 690, 100 So. 185, held that any alteration of an instrument which enlarged the scope as a means of evidence is material. It appears from that case that the blank had not been filled in with the amount of the indebtedness at the time the contract was signed by the sureties, and the filling it in afterwards without the consent or knowledge of the parties thereto constituted an alteration that avoided the contract. The clause involved there, however, did not provide, as the present contract does, "or if not, we hereby expressly authorize the amount of said indebtedness to be written therein." We think this clause entirely changes the effect of the contract, and that, under it, it is immaterial whether the amount was written in the contract at the time the sureties signed or not. By signing the contract with this authority therein for the amount to be written in it, they undertook to pay the amount that might be due.

There is no dispute whatever that the amount sued for is the true amount which King owed, and six hundred sixty dollars and sixteen cents was actually due at the time the contract was signed. The testimony of the several witnesses for the plaintiff is directly to the point, and is wholly undisputed.

This contract is a contract of sale and not a contract of agency, and, consequently, King was not the agent of the plaintiff in procuring sureties to sign the contract. He was antagonistic in interest to the plaintiff, and was acting in his own behalf. Consequently, his fraudulent representation cannot be attributed to the plaintiff. The plaintiff is not responsible for any misrepresentation or deception practiced upon the sureties by King. *Cresap*

v. *Furst & Thomas,* 141 Miss. 30, 105 So. 848. The sureties were distinctly charged with knowledge of the terms of the contract which they signed, and if they failed to read the contract before signing it, they have only themselves to blame, and cannot avail of their negligence in that regard. A party has a right to provide that the terms of a contract shall control, and if the plaintiff accepted the contract without notice of any fraud on the part of King, appellant is entitled to stand upon the contract as written.

In this respect, the court is controlled by the cases of *J. B. Colt Co.* v. *Odom,* 136 Miss. 651, 101 So. 853, and *Brenard Mfg. Co.* v. *Sumrall,* 139 Miss. 507, 104 So. 160. The judgment of the court below was therefore erroneous. It should have been rendered for the appellant. The judgment will therefore be reversed, and judgment entered here for appellant.

*Reversed, and judgment for appellant.*