J. R. WATKINS MEDICAL COMPANY, a Corporation, Appellant, v. F. G. PAYNE and C. O. Greenley, Respondents.

(180 N. W. 968.)

**Guaranty — alteration of contract by changing amount of liability releases securities.**

1. The plaintiff is engaged in manufacturing certain medicines, extracts, etc., which it sells at wholesale price to those with whom it contracts, limiting the party, in making sales, to a specific territory. It made a contract with one R. C. Hill, who had theretofore had other contracts with it. The contract contained a provision to pay indebtedness arising under former contracts. At the time defendants signed it, the amount of past indebtedness was not inserted in it. There was a blank space in the contract, where it could be inserted. These defendants signed the contract, as sureties. After the execution and delivery of the contract, without their knowledge or consent, the amount of the old debt was filled in the blank by the plaintiff.

*Held*, that this was a material alteration of the instrument, and operated to release defendants from all liability under it.

**Guaranty — signature by sureties held not to estop them from denying liability as to amount inserted without their knowledge.**

2. It is further *held*, in such circumstances, the signing thereof, by defendants, without the statement of the amount of past indebtedness in the blank, did not authorize the plaintiff thereafter to insert it, and plaintiff having done so, the defendants are not estopped to deny their liability on the contract.

**Pleading — under statute defendant may plead and prove inconsistent defenses.**

3. Under the provisions of subdivision 2 of § 7449, Comp. Laws 1913, a defendant may plead, and offer proof of, inconsistent defenses.

Opinion filed December 28, 1920. Rehearing denied January 11, 1921.

Appeal from separate judgments of the District Court of Sargent County, *F. J. Graham*, J.

Judgments affirmed.

*Ole S. Sem* and *Tawney, Smith, & Tawney,* for appellant.

"The proof or admission of a signature of a party to an instrument is prima facie evidence that the instrument written over it is his act, and this prima facie evidence will stand as binding proof, unless the maker can rebut it by showing evidence that the alteration was made after delivery." Riley v. Riley, 9 N. D. 580, 84 N. W. 347; Wilson v. Hayes, 40 Minn. 531; Modie v. Breiland, 9 S. D. 506, 70 N. W. 637; Foley, etc., Co. v. Solomon (S. D.) 170 N. W. 639; Cosgrave v. Fanebust, 10 S. D. 213, 72 N. W. 469; Wicker v. Jones, 159 N. C. 102, 74 S. E. 801, Ann. Cas. 1914B, 1083; Hanrick v. Patrick, 119 U. S. 156, 30 L. ed. 396; Hogen v. Merchants & Bankers Ins. Co. 81 Iowa, 330, 46 N. W. 1114; Magee v. Allison, 94 Iowa, 527, 63 N. W. 322; James v. Holdam, 142 Ky. 450, 134 S. W. 435; Dorsey v. Conrad, 49 Neb. 443, 68 N. W. 645.

If one signs an instrument containing blanks, he must be understood to intrust it to the person to whom it is so delivered, to be filled up properly, according to the agreement between the parties, and, when so filled, the instrument is as good as if originally executed in complete form. Merchants Nat. Bank v. Brastrup (N. D.) 168 N. W. 42; Porter v. Hardy, 10 N. D. 556, 88 N. W. 460; Re Tahite Co. L. R. 17 Eq. 273; Styles v. Scotland & Co. 22 N. D. 469, 134 N. W. 708; Montgomery v. Dresher, 90 Neb. 632, 38 L.R.A.(N.S.) 423, 134 N. W. 251.

Written contracts supersede oral negotiations. The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its (subject) matter, which preceded or accompanied the execution of the instrument. Comp. Laws 1913, § 5889; Gilber Mfg. Co. v. Bryan (N. D.) 166 N. W. 805; J. R. Watkins Medical Co. v. Holloway (Mo.) 181 S. W. 602; Graham v. Savage, 110 Minn. 510; Armstrong v. Cavanaugh (Iowa) 166 N. W. 673; Vogt v. Schenbeck, 123 Wis. 491, 100 N. W. 820.

Where a party seeks to avoid an instrument on the ground of an alteration, he must make out his case by clear and convincing testimony. Merchants Nat. Bank v. Brastrup (N. D.) 168 N. W. 43; Riley v. Riley, 9 N. D. 508, 84 N. W. 347; Maldner v. Smith, 102 Wis. 30, 78 N. W. 141; Brunton v. Ditto, 51 Colo. 178, 117 Pac. 156; Graham v. Graham, 184 Mich. 638, 151 N. W. 596; Droge Elwater Co. v. W. P. Brown Co. (Iowa) 151 N. W. 1048.

*Kvello & Adams,* and *A. Leslie,* for respondents.

If, after a name is signed as surety, the name of a preceding surety should be erased without the knowledge or consent of the subsequent signer, then, as to him, his contract would be materially altered, and he would be released from liability thereon. Cass County v. American Exch. State Bank, 9 N. D. 263, 83 N. W. 12; Hagler v. State, 31 Neb. 144, 47 N. W. 692; Porter v. Hardy, 10 N. D. 551, 88 N. W. 458; Watkins Medical Co. v. Miller (S. D.) 168 N. W. 373.

The addition to the contract of the additional liability of $1,487.60, without the consent of the defendants, voids the contract. Koch Medical Tea Co. v. Poitras (N. D.) 161 N. W. 727.

The guarantors, by so signing, were not estopped to deny liability on the amount thereafter filled in without their consent. Ibid.

GRACE, J. This action is one by plaintiff to recover upon a bond claimed to have been signed by these defendants as sureties. The case was tried to the court and a jury. The verdict of the jury was in defendants' favor. Judgment was entered thereon, and from it the plaintiff appeals.

The material facts, briefly stated, are as follows: Plaintiff is a manufacturer of certain medicines, extracts, etc. It is a corporation.

Its principal place of business is at Winona, Minnesota. It sells its product at wholesale prices to those who will undertake the sale thereof, who are required to confine their sales to territory specified in a written contract, which sets forth the agreement of the parties in detail.

One contracting with plaintiff is required to canvass the territory allotted to him under the contract at least three times a year, at his own cost and expense, and is required to provide a team, wagon, and outfit. He is required to keep a record of all the goods disposed of by him, and to make weekly written reports of all sales and collections, and of the goods on hand and outstanding accounts. He is also required to pay the freight or express, if any. At the termination of the contract, he agrees to pay the amount remaining unpaid. He also had the privilege of paying for the goods in cash within ten days from the date of invoice, and receive a 3 per cent discount, provided that full payment for all goods previously purchased had then been made.

Sufficient has been stated to indicate the nature of the contract. The plaintiff entered into a contract of the character above indicated with one R. C. Hill, of the state of North Dakota. The territory in which Hill might sell plaintiff's product was Sargent county, North Dakota.

The date of the contract is December 1, 1916. It would appear that, before the time of this contract, Hill had been engaged in selling plaintiff's product, and thereby became indebted to it, in the sum of about $1,487.60. The contract contained a provision whereby Hill promised to pay the company the indebtedness due it at the date of the contract. The time of payment thereof was extended during the time of the contract, which terminated on the 1st day of March, 1918.

Under certain conditions, the company had the right to limit or discontinue the sales, and either party could terminate the written agreement upon giving the other notice in writing; and, in that event, any indebtedness owing the company became immediately due and payable. The contract was signed by the company and by R. C. Hill. Immediately following Hill's signature is the following:

"In consideration of $1 in hand paid by the J. R. Watkins Medical Company, the receipt whereof is hereby acknowledged and the execution of the foregoing agreement, which we have read or heard read and hereby assent to, and the sale and delivery by it to the party of the second part as vendee, of its medicines, extracts, and other articles, and

the extension of the time of payment of the indebtedness due from him to said company, as therein provided, we, the undersigned sureties, do hereby waive notice of acceptance of this agreement and diligence in bringing action against the second party, and jointly, severally, and unconditionally promise and guarantee the full and complete payment of said sum and indebtedness and for said medicines, extracts, and other articles, and of the prepaid freight, and express charges thereon, at the time and place, and in the manner in said agreement provided."

Plaintiff claims that the foregoing was signed by F. G. Payne and C. O. Greenley. The action is upon the contract, to recover of the defendants the sum of $1,724.03, $1,487.60 of which is claimed to be the past indebtedness of Hill, and $236.43, the amount remaining unpaid for certain merchandise purchased during the time the contract under consideration was in force.

Payne and Greenley interposed separate answers. Payne's answer, after a general denial, in substance, alleges that during May, 1917, Hill requested the defendant to sign the instrument, which he represented to be a statement showing that he made regular trips through that territory, selling the medicine of plaintiff; that, before the paper was signed by defendant, Hill represented that he was acting in behalf and at the request of the plaintiff, in securing signatures to said paper, and as its agent; that Hill represented to him that the paper signed contained no obligation on the part of the defendant, in any manner or form; that the defendant can read and write with difficulty; that the instrument signed by him contained no typewriting near the bottom, as shown in the contract, to wit, "Fourteen hundred eighty-seven and 60/100 dollars;" that the plaintiff, without the knowledge, procurement, or consent of the defendant, knowingly and fraudulently altered the paper signed by defendant, by inserting in the blank space referred to the following words, to wit: "Fourteen hundred eighty-seven and 60/100 dollars;" that the paper was wholly without consideration.

Greenley's answer, after a general denial, states that Hill came to him about December 1, 1916, asking him to sign an instrument in the form of a contract or bond, on the printed form of plaintiff. He sets forth substantially the same representations made by Hill as to agency, as are contained in the answer of Payne, the same statement of fact relative to the fraudulent insertion of the item of $1,487.60; and that

Hill represented to him, that the instrument he was asked to sign was for future advances from the plaintiff to him; and that when the contract was presented to him, it contained, as a first signer, the name of W. E. Hill, father of R. C. Hill, with whom defendant was well acquainted, and upon whose prior signature he relied, and was induced and influenced to sign because of it; that thereafter R. C. Hill returned to the defendant and requested the execution, by the defendant, of another instrument of the same general form as the one first signed, stating that the instrument formerly signed was not satisfactory to the company; that, relying upon 'defendant's belief that R. C. Hill was the agent of plaintiff, for the purpose of procuring signatures to the contract, defendant signed the second instrument as presented, which did not contain the typewriting near the bottom of the contract, "fourteen hundred eighty-seven and 60/100 dollars."

Then follows an allegation alleging the fraudulent alteration of the instrument, and the insertion of the item of fourteen hundred eighty-seven and 60/100 dollars; and further, that, at the time the second instrument was signed, the name of W. E. Hill was signed in the place left for the first signer, and that defendant was induced and influenced to sign as a second signer, by virtue of his reliance upon the financial standing and integrity of W. E. Hill; and that had his name not appeared on the bond or contract at the head of the place that he was asked to sign, he would not have signed the same. He denies that, at this time, Payne's name was on the instrument, and denies any consideration for the alleged contract.

Plaintiff interposed reply to each answer, among other things setting forth that the contract expressly provides that the contract may not be changed or modified in any respect, except in writing by the parties thereto; and that the contract provided that R. C. Hill had no power nor authority to incur any debt, obligation, or liability of any kind whatsoever, in the name of, or for, or on account of, the said company, etc.

The principal issues as to Payne are:

(1) Did he execute the contract upon which suit is maintained?

(2) If the indebtedness of $1,487.60 was not inserted in the agreement at the time the same was executed by him, was it inserted by the company, without authority, after its return to it?

As to Greenley, the issues are:

(1) Did R. C. Hill, in procuring Greenley to execute the contract, make statements and representations to the effect that W. E. Hill had signed as first surety; and that the contract was for future indebtedness and not for past?

(2) The same as No. 2, supra, of Payne's case.

Appellant has specified twenty-two errors. We have considered each of them, but will discuss only such as are of importance and necessary in reaching a determination of the questions presented in this appeal.

Payne's defenses, that he never signed the contract sued upon, and that the contract was altered in the manner above stated, are claimed by appellant to be inconsistent, and that for this reason the second defense is not available. In this contention appellant is in error.

Under the provisions of subdivision 2 of § 7449, Comp. Laws 1913, Payne could plead and offer proof of every defense he had to the contract, though such defenses might be inconsistent.

It is not difficult to discern that the statute is of much importance in the preservation of valuable rights to a defendant. To illustrate, the defendant in the present case may have been absolutely certain that he never signed the contract sued upon, but it might also appear that his name was signed to the contract, and that the signature was so similar in appearance to his genuine signature that it might be difficult to prove that the purported signature was not his; that there might be adduced such evidence as would lead the jury to believe that the signature attached to the instrument was his, though, in fact, it was not.

In such circumstances, we do not think that the defendant should be precluded from asserting any other defense he had to the contract, even though inconsistent with the defense that he had not signed the contract; for he was not liable if he never signed the contract; neither was he liable if it were found that he did sign the contract, if the contract were materially altered after it was signed, without the consent of defendant, and after it came under control of plaintiff. Certainly there was no error in permitting inconsistent defenses.

Error is assigned, by refusal to receive in evidence exhibit "1" (the contract upon which suit is brought) under the admissions, in the separate answer of Payne. In this, there was no error. Payne, in his answer, did not admit signing exhibit "1." He there states that Hill came to him and requested him to sign an instrument or paper. This

is far from admitting the execution of the alleged contract sought to be introduced in evidence, in the manner above stated.

It is true, he did sign an instrument, but the testimony shows this to have been Exhibit "2," which was signed by him in pencil, and that his signature was thereafter traced in ink by someone.

The company received this instrument, but was not satisfied with the manner in which it was executed, and detached the signatures from it and returned them to Hill, requesting him to have a new contract executed, the blank for which it inclosed him. This is the contract which is marked exhibit "1," and upon which the plaintiff seeks to recover, and which purports to be signed by Payne, and is admitted to have been signed by Greenley.

Payne's testimony is to the effect that he never signed this contract; that Hill never came back (meaning after the time the first contract was signed) and asked him to sign any other paper in connection with the Watkins Company petition or any other petition; that he was not there in the latter part of May or in the first part of June, asking him to sign the papers.

Opposed to this testimony are photographs of certain instruments introduced, containing the genuine signature of Payne, the purpose being to show that the signature thereon was the same as that on exhibit "1," which is claimed by plaintiff to be that of Payne.

Certain bankers compared Payne's genuine signature on these instruments, with that on the contract, and pronounced them as written by the same hand. Whether the signature to the contract was the signature of Payne was a question of fact for the jury, under all the evidence adduced in that regard.

The jury, by its general verdict, determined all the issues in the case in favor of Payne, and necessarily determined that he never signed exhibit "1." That there is substantial evidence in the record to sustain the verdict, there is not the least doubt.

Payne should be more familiar with, and know his signature with greater certainty than any other person. He knew he signed the first contract, which never became effective. He also should know, as a matter of fact, whether he did sign the second contract, and his testimony, to the effect that he did not, and that the signature thereon was not his, is substantial evidence in that regard; and according to his

testimony, Hill never saw him in the latter part of May or in the first part of June, when, as the evidence shows, the second contract was signed by parties other than Payne; and there is no other testimony showing that Hill did see him at that time. Hill was neither a party to this action nor a witness in the case. The relation of Payne and Greenley on the contract was that of surety.

Payne's further defense is to the effect that the contract was materially altered by the insertion of the item of $1,487.60.

The plaintiff claims there is no alteration of the contract. It contained a printed provision as follows:

"The party of the second part (Hill) hereby promises to pay said company, at Winona, Minn., during the term of this agreement, the indebtedness now due it, for goods and other articles sold and delivered to him, as vendee, f. o. b. cars at its regular places of shipment, payment of which is hereby extended during said term. The parties hereto, for the purpose of settling and determining the amount now due, hereby mutually agree that the said indebtedness now due company is the sum of ———— dollars, which sum the second party agrees to pay, and payment of which is extended, as above provided. And it is further mutually agreed that either of the parties hereto may terminate this agreement at any time by giving the other party notice thereof in writing by mail, and any indebtedness then owing from said second party to said company shall thereupon be and become immediately due and payable."

It is claimed the contract having provided for the payment of the indebtedness, that insertion of the sum of the indebtedness, by the plaintiff, after the execution of the contract and delivery of it, would not constitute an alteration of it.

We are of the opinion, upon consideration of the language of the contract above quoted, that it did not amount to a contract to pay an undetermined or unknown amount of indebtedness from Hill to the plaintiff, and that to give effect thereto, it was necessary to insert the specific amount of such indebtedness.

It is true the language is: "The parties hereto, for the purpose of settling and determining the amount now due, hereby mutually agree, etc.," but, in the circumstances here, this would really mean nothing,

unless the blank, at the time the contract was signed, was filled in, with the amount of indebtedness then determined to be due.

There is competent evidence, substantial in quantity, to show that, in the contract Payne signed, and at the time he signed it, the amount of the indebtedness, in the sum of $1,487.60, was not inserted therein.

He testified that Hill represented that what he wanted him to sign was a petition showing that he made three trips a year; that Hill read part of it to him. Payne, at the trial, in answer to a question, said: "I asked him if there was any money in any form in that (meaning what he termed a petition) and if there was, I would not have anything to do with it, and he said there was not anything in there. He said, 'I have read it to you.'" Payne has little education. He stopped attending school at the age of thirteen years, and he was then in the third grade.

On cross-examination, he testified:

Q. Did you scrutinize this contract sufficiently close to see that this typewriting "fourteen hundred eighty-seven and 60/100 dollars" was not typewritten in there?

A. Yes, sir.

Later in the cross-examination, he was asked the following question:

Q. You cannot say for sure whether that amount was typewritten in there?

A. Yes, sir. It was not there. I looked to see if there was any money written in.

There is some other testimony having some weight in this regard, but it is not necessary to refer to it. Sufficient has been said to show that appellant's claim, that Payne's defense in this regard has no support in the evidence, is absolutely without any merit.

The jury having returned a verdict in favor of each defendant, and the same being supported by substantial evidence, it must be held that the jury determined, by its general verdict, that the words "fourteen hundred eighty-seven and 60/100 dollars" were not in the contract signed by Payne, at the time he signed it, nor in the contracts admittedly signed by Greenley.

It would seem to follow that the insertion of the amount must have occurred after the return of the contract to plaintiff, and that the same

was made by plaintiff or someone acting under his direction or authority.

The insertion of the amount of the indebtedness, in the blank space, by plaintiff, or its agents, after the same had been returned to it, or after defendants signed, was a material alteration of the contract, the legal effect of which was to release defendant from all obligation under it.  See § 5940, Comp. Laws 1913.

That the alteration of the contract, in the manner above shown, was a material one, and extinguished the executory obligations contained in it, in favor of plaintiff, the defendants never having consented thereto. See Porter v. Hardy, 10 N. D. 551, 88 N. W. 458.

The filling in of the blank, in the manner as shown by the evidence, was a material alteration of the instrument.   J. R. Watkins Medical Co. v. Miller, 40 S. D. 505, 168 N. W. 373; Dr. Koch Medical Tea Co. v. Poitras, 36 N. D. 144, 161 N. W. 727.  This case is clearly distinguishable from that of Merchants' Nat. Bank v. Brastrup, 39 N. D. 619, 168 N. W. 42.

What has been said with reference to the legal effect of the material alteration of the contract applies, in the proceeding, against each defendant.

A further reason why Greenley should be wholly discharged from the contract is that when he first signed it, it was on the strength that the name of W. E. Hill appeared as the first surety.  R. C. Hill had represented to him that his father would first be responsible on the bond, before there would be any liability on his part.

It would seem, from the evidence, that Greenley knew that W. E. Hill was of some financial worth, and that he relied upon his being first surety.  This was also true at the time of signing of the second bond or contract.  His testimony shows that he signed each time in pencil. The contract appears with the name of Payne as first surety and Greenley as second surety.

Greenley having a verdict, the jury must have determined that each time Greenley signed the bond the name of W. E. Hill appeared as first surety, and that it was upon the strength of that that he signed the bond.

There is no need to refer to all the evidence in this regard.   Suffice it to say there is substantial evidence to sustain the verdict.

Where one signs his name as surety, after the name of a preceding

surety, whose name is erased without his knowledge or consent, it constitutes a material alteration of his contract, which operates to release him from liability. Cass County v. American Exch. State Bank, 9 N. D. 263, 83 N. W. 12; Hagler v. State, 31 Neb. 144, 28 Am. St. Rep. 514, 47 N. W. 692.

There is substantial evidence to show that the $1,487.60 was not in any of the contracts at the time they were signed by either of the defendants. The testimony conclusively shows that the above amount was written in the contracts in the plaintiff's office.

The verdict of the jury being in defendants' favor, it must have necessarily decided that the sum above mentioned was not in the contracts when signed by defendants, and that it was thereafter inserted by the plaintiff, without any authority from the defendants to do so.

A stenographer in the employ of plaintiff testifies, in substance, that she did all the typing, where the same appears on the contracts.

We think the contract must be considered as an entire, and not a severable, one. It was all one contract and indivisible. The material alteration of it destroyed it entirely. Schlosser v. Moores, 16 N. D. 185, 112 N. W. 78.

After a full consideration of the case, we are fully satisfied there is no error in the admission or exclusion of evidence, nor in the ruling upon objections, nor in the giving of instructions, nor in the refusal to give special instructions, requested by the plaintiff. There is substantial evidence to sustain the verdict in favor of each defendant.

The judgments appealed from are affirmed. Respondents are entitled to their costs and disbursements on appeal.