[No. 19048. *En Banc.* July 31, 1925.]

## J. R. WATKINS COMPANY, *Appellant*, v. F. E. DENBEIGH et al., *Respondents.*[1]

CONTRACTS (72)—CONSTRUCTION—ENTIRE OR SEVERABLE CONTRACTS. A contract of suretyship guaranteeing the past indebtedness in a certain amount, and also all future indebtedness which may arise in the prosecution of a business, is severable, so that a material alteration therein as to the past indebtedness does not relieve from liability for the amount of admitted future indebtedness.

ALTERATION OF INSTRUMENTS (4)—FILLING BLANKS. The filling in of a blank left for the amount, after the execution of a surety contract, wherein the amount of past indebtedness guaranteed was "mutually agreed upon," is not a material alteration vitiating the contract, where the contract contained a promise to pay the past indebtedness and was complete without the "mutual" agreement as to the amount due; especially where, at the trial, the amount due was admitted (TOLMAN, C. J., HOLCOMB and FULLERTON, JJ., dissenting).

Appeal from a judgment of the superior court for Okanogan county, Neal, J., entered November 20, 1924, upon the verdict of a jury, rendered in favor of the defendants, in an action on a surety contract, tried on the merits. Reversed.

*Wm. C. Brown, Tawney, Smith & Tawney,* and *E. D. Libera,* for appellant.

*P. D. Smith,* for respondents.

MITCHELL, J.—The J. R. Watkins Company is a Minnesota corporation, located at Winona. It is engaged in manufacturing and selling medicines, extracts and other articles. It appears that, prior to the date of the contract on which this action was brought, the defendant Denbeigh had been engaged in selling merchandise furnished by the corporation in a certain portion of the state of Washington, on account of which

[1]Reported in 238 Pac. 13.

he was indebted to the corporation in the sum of $2,-217.76. Desiring to continue the business, the present contract was entered into under date of December 1, 1919, to expire on March 1, 1921. It obligated the corporation to furnish Denbeigh merchandise reasonably needed for the territory, at wholesale prices, and obligated him to canvass the territory, sell the goods, and to pay such prices or return the goods at times and in the manner specified in the contract. The contract is on a printed form near the end of which are the following provisions:

"The party of the second part hereby promises to pay said Company, at Winona, Minnesota, during the term of this agreement, the indebtedness now due it for goods and other articles heretofore sold and delivered to him as vendee, f. o. b. cars at its regular places of shipment, payment of which is hereby extended during said term. The parties hereto, for the purpose of settling and determining the amount now due, hereby mutually agree that the said indebtedness now due said Company is the sum of Twenty-two hundred seventeen and 76/100 Dollars, which sum the second party agrees to pay, and payment of which is extended, as above provided."

It was signed by both parties. Underneath it there is a printed contract of guaranty which is as follows:

"In consideration of one dollar in hand paid by The J. R. Watkins Company, the receipt whereof is hereby acknowledged, and the execution of the foregoing agreement by said Company, which we have read or heard read and hereby agree and assent to, and the sale and delivery by it to the party of the second part, as vendee, of its goods and other articles, and the extension of the time of payment of the indebtedness due from him to said Company, as therein provided, we, the undersigned sureties, do hereby waive notice of the acceptance of this agreement and diligence in bringing action against the second party, and jointly, severally and unconditionally promise and guarantee

the full and complete payment of said indebtedness, the amount of which is now written in said agreement, and for said goods and other articles, and the prepaid freight and express charges thereon, at the time and place, and in the manner in said agreement provided.''

The surety contract was signed by T. M. VanCleave, Harley Payne and N. R. Judson.

The corporation brought this action against the principal and all the sureties, to recover $2,217.76, and also a balance due in the sum of $325.93 for merchandise sold after the date of the contract. Denbeigh could not be found. Judson defaulted, after personal service of process on him, and an order to that effect was entered. The other sureties, VanCleave and Payne, answered, denying generally the allegations contained in the complaint; and further stating that they did not, by signing the surety contract, agree to pay any debt already due by Denbeigh, as the amount thereof, to wit, $2,217.76, was written in the body of the principal contract after the sureties signed the instrument; and further stating that the only consideration for their signing the contract at all was that they were promised that a relative of theirs should share in the profits and do a part of the work with Denbeigh. A reply denied these further allegations of the answer. On the trial, there was a verdict for the defendants. The plaintiff has appealed from the judgment on the verdict.

As to the defense that the consideration upon which the respondents signed was that a relative of theirs should take part in the business and share in the profits, we do not understand that is urged on the appeal; at least, there is neither allegation nor proof that the appellant was in any way connected with such representations or made aware of them at any time prior to the answer. The contract was admittedly

signed by the respondents with the understanding that it was to be forwarded to the appellant.

The printed form used contained originally a blank line on which, as the contract appears in suit, was written in typewriting the words and figures "Twenty-two hundred seventeen and 76/100" immediately before the word "Dollars," in speaking of the amount of the indebtedness "now due said company."

The principal question of fact in the case is whether the amount of the existing indebtedness was already written in the contract when the respondents signed the instrument. The respondents testified it was not; while the proof on behalf of the appellant shows that it was, both before it forwarded the contract from Winona for execution and upon its being returned. The jury having found for the respondents, we accept it as an established fact that the amount was written in after the respondents signed the contract. Therefrom, it is argued on behalf of the respondents that, because of the alteration in its terms, claimed by them to be material, the contract was vitiated and the signers released from all liability. The same view appears to have been entertained by the trial court upon denying appellant's motion for a judgment notwithstanding the verdict.

In disposing of the case, we shall consider the contract as severable and containing two distinct features, one referring to the future sale of goods and the other to the amount already due and owing at the date of the contract. As to the first one, there is no pretense that the contract as it related specifically to that cause of action was in any manner altered; and since the proof in the case and the admission of the respondents at the trial that there was no dispute that Denbeigh did owe $325.93, appellant is entitled to recover that

amount against the respondents, even if it should be held that the alteration complained of did avoid the contract as to liability on their part with reference to the other feature of the contract. *Parke & Lacy Co. v. White River Lumber Co.*, 110 Cal. 658, 43 Pac. 202; 32 Cyc. p. 177-8, note 75.

Concerning the other feature or cause of action, the amount already due at the date of the contract, there were two provisions in the contract which have an important bearing on the case. The first one was:

"The party of the second part hereby promises to pay said Company, at Winona, Minnesota, during the term of this agreement, the indebtedness now due it for goods and other articles heretofore sold and delivered to him as vendee, f. o. b. cars at its regular places of shipment, payment of which is hereby extended during said term."

The second one (which may be termed the mutual agreement clause), without the alteration complained of, was:

"The parties hereto, for the purpose of settling and determining the amount now due, hereby mutually agree that the said indebtedness now due said Company is the sum of........................Dollars, which sum the second party agrees to pay, and payment of which is extended, as above provided."

The primary and chief purpose of this part of the contract was the promise to pay the indebtedness already due within the time extended for making the payment. The instrument would have been and was entirely complete for that purpose without the mutual agreement clause, whether the blank space in it was filled or not. The first one of these two provisions contained the promise to pay the indebtedness then due, payment of which was extended during the term of the contract; the second one states that the parties

mutually agree that the indebtedness now due is
................... dollars, and repeats the promise of the
second party to make payment within the time ex-
tended. So far as this case is concerned, if the sec-
ond clause of the contract had not been altered or
added to by stating the amount in the blank space, the
obligation would have been to pay $2,217.76, the amount
of the indebtedness then due, just as it was by way of
repetition after the blank space in the second sentence
was filled. We say so far as this case is concerned,
for the reason that the appellant alleged in its com-
plaint that the indebtedness at the date of the contract
was $2,217.76; and, at the call of the case for trial,
counsel for the respondents admitted that they would
make no defense as to the amount of the indebtedness
sued for against Denbeigh and the contesting defend-
ants, who are respondents here, and that their defense
was that, by filling in the blank, the contract was totally
vitiated. By this admission, the purpose of the pro-
vision claimed to have been changed by writing in the
amount was no longer in the case for its evidentiary
value; and whether the change be considered from that
viewpoint or any other, it could in no way be consid-
ered a material alteration. As altered, it but spoke the
truth, in legal effect, according to the true intent of
the obligors with reference to the amount then due
which they agreed to pay.

The instrument they signed is a non-negotiable one.
The parties to it are the parties to this action. The
sureties, who are respondents here, by their writing,
stated that they had read the agreement or heard it
read and unconditionally promised, jointly and sever-
ally, to pay the indebtedness. What indebtedness? It
was the indebtedness due the appellant by Denbeigh
at the date of the contract, the time for the payment of
which was extended, and which the respondents at the

trial admitted to be the amount stated in the complaint which was also the exact amount the writing in of which in the second sentence constituted the alteration complained of. The alteration of the mutual agreement clause by writing in the amount of the indebtedness, as the jury found the fact to be, only necessitated proof of the amount, but when, at the trial of the case, the respondents admitted the amount to be the correct amount of the indebtedness, the mutual agreement clause, whether altered or not, became wholly immaterial.

Identically the same kind of contract was construed in the case of *Dr. Ward's Medical Co. v. Wolleat,* 160 Minn. 21, 199 N. W. 738. Plaintiff in that action brought suit on account to recover an amount due at the date of the contract and also a balance for goods thereafter sold. The principal, Wolleat, did not answer. The sureties answered that they did not know of any existing indebtedness and that the contract as they signed it, contained a blank line where now appears the amount of the old indebtedness written in without any authority from them. This was denied by a reply. The jury found for the defendants. The plaintiff appealed from a judgment on the verdict. In reversing the judgment and directing judgment to be entered for the plaintiff the court said:

"In the face of the verdict we must conclude that the alteration was made. Was it a material one? The amount was correctly stated.

"The contract between the original parties, to which the guaranty related, contains certain prominent elements, namely, a provision to sell merchandise and manner of payment, also a promise 'to pay the indebtedness now due from him to said Company for goods and other articles heretofore sold and delivered to him as vendee f. o. b. cars to Winona, Minn., pay-

ment of which is hereby extended during the term of this agreement.' This is a part of the contract which respondents guaranteed. Had it stopped there the liability of respondents could not be doubted. A material change or alteration of an instrument is one which causes it to speak a language different in legal effect from that which it originally spoke. If the meaning of the instrument remains as it originally stood the alteration is not material. *Board v. Gray,* 61 Minn. 242, 63 N. W. 635; 2 C. J. 1173; 1 R. C. L. 967; *Board v. Greenleaf,* 80 Minn. 242, 83 N. W. 157; *J. R. Watkins Co. v. Powell,* 93 Okl. 219, 220 Pac. 585.

"Appellant was not content with this effective contract, but, wisely, and with good business economy, sought to save itself unnecessary expenses incident to litigation, and, hence, following this, we find a further provision which is inserted for an expressed purpose, and which in this case we will assume was before the alteration in this language:

" 'For the purpose of settling and determining the amount of the said indebtedness now due it is hereby mutually agreed between the parties hereto that there is now due the sum of ............... dollars, which sum the second party (Wolleat) hereby promises and agrees to pay said company during the term of this agreement, and payment of which is hereby so extended.'

"It is plain that this sentence in this contract was included for the very purpose of having the amount, then due, liquidated so that the contract itself would, thereafter, determine the amount of such existing indebtedness so that plaintiff would not, thereafter, have to produce its books and records and be annoyed by the inconvenience of having to prove its account.

"The language hereinbefore set forth is quite sufficient to constitute an agreement to pay an indefinite amount of existing indebtedness, but under the contract appellant would, if necessary, have to prove that indebtedness and the amount thereof. What, then, is the effect, if any, of inserting the amount of that in-

debtedness? It is this: It changes the evidentiary effect of the instrument. By this insertion the contract is made competent evidence of the existence and amount of such indebtedness, and it would thereby relieve appellant of the burden of proving it by other evidence.

"While the evidentiary effect of the contract was changed, we do not regard the legal effect of the contract changed. In this we are not in harmony with the Supreme Court of South Dakota. *J. R. Watkins Medical Co. v. Miller*, 40 S. D. 505, 168 N. W. 373. We prefer to construe this contract on the theory that the gist of the agreement of defendants, in so far as it related to a then-existing indebtedness, was fixed and determined by the language in the contract in the sentence immediately preceding the one in which it is claimed the blank was filled in after respondents signed the instrument. They agreed to pay an existing debt incurred under a prior contract in consideration of an extension of the time of payment. The correct amount thereof was inserted in the blank space. That being so, the legal effect of the contract was not disturbed even though we may concede that its evidentiary effect was enhanced. The contract, itself, was not made to speak a different language in legal effect. Its identity was not lost. The amount inserted being correct, it could do no harm. Such is not a material alteration. The insertion of the correct amount did not in the least disturb the equilibrium of their legal liability arising out of the contract as they executed it."

To the same effect is the case of *Watkins Medical Co. v. Powell*, 93 Okl. 219, 220 Pac. 585, involving this same form of contract as to both provisions.

The case of *Watkins Medical Co. v. Miller*, 40 S. D. 505, 168 N. W. 373, referred to in the Minnesota case above mentioned is relied on by the respondents. The case does appear to be contrary to the holding in the Minnesota court, but to the extent that it does so, it loses its force, in our opinion, for the reason that the contract involved in that case did not contain a clause

similar to the first one in the case at bar and like the first one in the contracts in the Minnesota and Oklahoma cases but only the one somewhat like the second one, of which the South Dakota court said:

"It is conceded that the contract was not changed in any respect after the guaranty was signed, save by the insertion of the true amount of Miller's indebtedness. We are of the view after a careful consideration of the language used that the provision of the contract which is quoted above did not amount to a contract or agreement to pay an indefinite or undetermined amount of indebtedness due from Miller to the corporation, but that the insertion in the contract of the specific amount of such indebtedness was essential to give it any binding force whatever. Reading the contract with the blank space unfilled, it does not even amount to a declaration that there is any such indebtedness. If this view is correct, the filling in of the blank space changed the contract from one which did not guarantee payment of an existing indebtedness into one which did guarantee such payment."

Respondents further rely on the North Dakota case of *Watkins Medical Co. v. Payne,* 47 N.D. 100, 180 N.W. 968, decided in 1920. The contract in that case had the two clauses like the one in the present suit, and the guarantors claimed that the amount had been written in the blank space in the second clause after they signed the contract. The court said that, upon consideration of the language of the contract, it did not amount to a promise to pay an undetermined amount then due, and that to give it effect it was necessary to insert the specific amount of such indebtedness, and continuing said:

"It is true the language is: 'The parties hereto, for the purpose of settling and determining the amount now due, hereby mutually agree,' etc.; but in the circumstances here, this would really mean nothing, unless the blank, at the time the contract was signed, was

filled in with the amount of indebtedness then determined to be due.''

As between these two cases and the Minnesota and Oklahoma cases, we are disposed to adopt the views of the Minnesota and Oklahoma courts, written at later dates, for the reasons given in those decisions.

Respondents further rely on the case of *Watkins Medical Co. v. Fornea*, 135 Miss. 690, 100 South. 185. The contract in that case contained both provisions, and the defense was that the blank in the second sentence.had been filled in after the guarantors signed. The court held, like the Minnesota and Oklahoma courts did and contrary to the holding in the North Dakota case, that ''without the filling in of this blank there was a completed agreement to pay the account then owing.'' This, manifestly, because of the unqualified provision in the first sentence of the contract. The Mississippi court further stated, however, that this completed agreement to pay the account then due was not an agreed or stated amount, but would have to be proved by testimony, and that the alteration made by inserting the amount in the second clause of the contract enlarged the scope of the instrument as a means of evidence and that, under the rule in that state, the alteration was material.

This evidentiary rule in Mississippi is contrary to the rule in Minnesota, as already noticed in the case of *Dr. Ward's Medical Co. v. Wolleat, supra,* and as stated in *McConnon & Co. v. Hovland,* 156 Minn. 252, 194 N. W. 394, wherein the Minnesota court relying on its own decisions and those of other states says:

''The undertaking specifically provides for the payment by respondents to the plaintiff of the indebtedness of Hovland existing at the time of its execution, and such other indebtedness as might thereafter be incurred. By such provisions appellants became uncon-

ditionally obligated to pay the amount which Hovland owed to plaintiff at the date of the undertaking, not exceeding the sum of $600. This being true, to insert in the blank space left in the contract, if it was so left, the amount of the indebtedness existing at that time, was not a material alteration. Under the holdings in this state, the filling in of the blank, under such circumstances, does not constitute a change or alteration which would release the sureties. It was not changing the effect of the instrument; it was simply completing it, under an implied authority in appellant. *Herrick v. Baldwin,* 17 Minn. 209 (Gil. 183), 10 Am. Rep. 161; *State v. Young,* 23 Minn. 551; *Board of Com'rs v. Gray,* 61 Minn. 242, 63 N. W. 635; 32 Cyc. 67; *Eichelberger v. Old Nat. Bank,* 103 Ind. 401, 3 N. E. 127; *Montgomery v. Dresher,* 90 Neb. 632, 134 N. W. 251, 38 L. R. A. (N. S.) 423."

Also see *Commonwealth National Bank of Dallas v. Baughman,* 27 Okl. 175, 111 Pac. 332.

In view of our conclusion that, as a matter of law, there was no material alteration in the contract, the judgment of the trial court is reversed with directions to enter a judgment in favor of the appellant.

PARKER, ASKREN, BRIDGES, and MACKINTOSH, JJ., concur.

HOLCOMB, J. (dissenting)—Although there should doubtless be judgment for the goods sold after the execution and delivery of the guaranty in the sum of $325.93, that for the pre-existing debt of $2,217.76 should be disallowed. According to the verdict of the jury on the facts, that amount was filled in the blank space after the delivery of the instrument. To say that such was not a *material alteration* is one of the most thorough fictions imaginable. To permit such addition to a written instrument opens the widest doors to unlimited fraud. It cannot be sound in law or justice. As delivered, the instrument guaranteed "blank dollars."

No alteration or addition to a written instrument intended to be the entire evidence of the transaction in itself, has ever been approved by this court, or should be.

The reasoning of the courts of North Dakota, South Dakota, and Mississippi seem sounder in principle, and should be followed, no matter what number of courts have held otherwise.

On that matter, I dissent.

TOLMAN, C. J., and FULLERTON, J., concur with HOLCOMB, J.