Morley-Murphy Company, Appellant, vs. Van Vreede and another, Respondents.

*October 13—November 10, 1936.*

For the appellant there was a brief by *North, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, and oral argument by *F. N. Trowbridge*.

For the respondents there was a brief by *Fox & Fox* of Chilton, and oral argument by *Leo P. Fox*.

NELSON, J. For many years prior to March 28, 1932, John Van Vreede, a brother of the defendants, was engaged in business as a retail hardware merchant. On that date he was indebted to the plaintiff in the sum of $2,198.35 for goods theretofore sold and delivered to him by the plaintiff and for certain accrued interest. Some of his indebtedness was evidenced by promissory notes and some by open account. For some time prior to March 28th, the plaintiff felt considerable concern regarding Van Vreede's indebtedness and sought to have it secured in some way. John Van Vreede, however, was unable to secure it. On March 28th, the defendants, who were farmers, came to the store of John Van Vreede pursuant to his request. William Poirier, a fieldman in the credit department of the plaintiff, was also present pursuant to a prearrangement. He had with him a form of guaranty which he had brought with him and which he was desirous of having the defendants sign. An extended interview between Mr. Poirier and the three Van Vreedes took place. While considerable dispute arose at the trial as to what was said by Poirier at that meeting, we shall pass over that because, in our view, under the findings of the court and in view of the disposition to be made of this action, much of the conversation there had is not of controlling importance. Suffice it to say, that at the conclusion

of the interview, the defendants, one of whom had read the guaranty, and the other of whom had had an opportunity to read it, signed it and delivered it to Mr. Poirier. The guaranty was addressed to the plaintiff, and so far as here material, was as follows:

"Please sell and deliver to J. H. Van Vreede of Wrightstown, Wisconsin, on your usual credit terms, such goods, wares and merchandise as he (or it, or they) from time to time may select, and in consideration thereof I hereby guarantee and hold myself personally responsible for the payment at maturity of the purchase price of all such goods, wares and merchandise so sold or delivered whether evidenced by open account, acceptance, note or otherwise."

"This is intended to be a continuing guaranty applying to all sales made by you to said J. H. Van Vreede from this date until the same is revoked by me by letter dispatched by registered mail, and a registered return receipt for said letter shall be conclusive evidence of the receipt of notice of revocation. In further consideration for the sale and delivery of goods, wares and mdse., such as J. H. Van Vreede may from time to time select, I also hereby guarantee and hold myself personally responsible for the payment within —— days from this date for the amount of the indebtedness of said J. H. Van Vreede to Morley-Murphy Co. as of this date, it being distinctly understood by me that this indebtedness now amounts to twenty-one hundred ninety-eight 35/100 ($2,198.35) dollars."

After the guaranty was executed and delivered, the plaintiff continued to fill the orders for merchandise sent it by John Van Vreede, continuing so to do until about the last of May, 1933, when John Van Vreede made a voluntary assignment for the benefit of his creditors. Some time during the month of December, 1932, Poirier inserted in the blank preceding the word "days" the figures "280."

Mr. Poirier testified with reference to the blank space as follows:

"We did not know what length of time to put in there. At this time I was talking to Mr. Theodore Van Vreede and

4

.Mr. Bert Van Vreede, and when it came to filling in the length within so many days, I didn't know what date to put in there, so I mentioned that we would leave that blank, and that any time in the future if we thought it necessary to put in a date, that we would get together,— . . . I mean myself and the guarantors,—and we would put in the date."

Mr. Poirier admitted that in December, 1932, he inserted the figures "280" without again mentioning it to the defendants, and without consulting or talking to either of them regarding the insertion of "280" in the guaranty. The guaranty, as annexed to the complaint as an exhibit, contained the figures "280." The defendants in their answer set up fraud on the part of Poirier in obtaining the guaranty. The fact that the guaranty had been altered was apparently not discovered by the defendants until Mr. Poirier admitted upon the trial that he had made the alteration. The defendants then asked leave to amend their answer so as to assert that the contract had become void by reason of the material alteration of the instrument by the plaintiff's agent. That amendment was allowed.

The court found, among other things, that no statements were made by Mr. Poirier at the time the guaranty was obtained, which were misrepresentations or intended to defraud; that some time after the guaranty was signed the figures "280" were inserted in the guaranty by Mr. Poirier; that the plaintiff had no right to apply payments made by John Van Vreede to it after March 28, 1932, in discharge of the old indebtedness, evidenced in part by notes and in part by open account, because after that date the plaintiff dealt with John Van Vreede only on a C. O. D. basis, requiring cash or checks to accompany his orders. The court concluded that the indebtedness existing on March 28th, was not paid by the plaintiff's application of the payments made by John Van Vreede after March 28, 1932, to the old in-

debtedness; and that the insertion in the guaranty of the figures "280" amounted to a material alteration which voided the guaranty and released the defendants. The finding that after March 28th, the plaintiff dealt with John Van Vreede only on a C. O. D. basis is vigorously assailed by the plaintiff as being unsupported by the evidence. We agree that that finding is not supported by the evidence. But that finding, in our view, is wholly immaterial.

The only questions which, in our opinion, need be determined are, (1) whether the insertion of the figures "280" constituted a material alteration of the guaranty, and, if so, (2) whether the contract of guaranty was thereby voided.

That the alteration of the guaranty was a material one should give rise to no serious controversy. Changing the date of payment or inserting a date of payment when no date is contained in a contract is, under all of the authorities, a material alteration. That rule is elementary.

The plaintiff, however, contends that under the facts and circumstances of this case the admitted alteration was immaterial, since it was not made by Poirier until the total of the payments made by John Van Vreede to the plaintiff, unaccompanied by any instructions as to their application and which were applied by the plaintiff on the old indebtedness, exceeded the amount of the old indebtedness. The contention might be considered sound if the asserted facts, upon which it is based, were true. Mr. Poirier did testify, quite inadvertently, we think, when that testimony is considered in connection with his other testimony, that the old indebtedness was paid between the 28th day of March and the middle of December, 1932. That testimony is wholly inconsistent with the plaintiff's account against John Van Vreede, stated as of June 1, 1933, and received in evidence. That account undisputably shows that even counting a note for $286.56, credited to the account as of March 29, 1932, and count-

ing certain merchandise credits, the total of the amounts credited up to the end of December, 1932, on the account was far less than the total of the old indebtedness represented by notes and the open account. Many of the payments which are relied upon to show that the old indebtedness was paid at the time the alteration was made were not paid by John Van Vreede or credited by the plaintiff on its account until long after the alteration was made. The amount of the payments which it is asserted were sufficient, when applied to the old indebtedness, to wipe it out, clearly includes many payments made long after the month of December, 1932. The facts, therefore, do not support the plaintiff's contention that the alteration was made at a time when the old indebtedness was fully paid and liquidated.

The plaintiff next contends that even assuming that the alteration was material, it should be held that the contract of guaranty is separable, and that only that portion thereof which guaranteed the amount of the indebtedness of John Van Vreede, existing on March 28th, should be deemed voided by the alteration. While there is some authority that supports that contention, *J. R. Watkins Co. v. Denbeigh,* 135 Wash. 488, 238 Pac. 13; *Parke & Lacy Co. v. White River Lumber Co.* 110 Cal. 658, 43 Pac. 202, we conclude that the sounder and better rule, which is also the general rule, is to the effect that "any material alteration of a written instrument made after its execution by a party claiming thereunder or with his privity, without the authority or consent of the other party or parties to the instrument, invalidates the instrument in the hands of the party responsible for the alteration, and his assigns, as to all nonconsenting parties." See 2 C. J. p. 1175, and the numerous cases cited in support of the text, among which are *Low v. Merrill,* 1 Pin. 340; *Matteson v. Ellsworth,* 33 Wis. 488; *Kilkelly v. Martin,* 34 Wis. 525. See also *Farmers & M. State Bank*

*v. Huss,* 182 Wis. 658, 197 N. W. 177; *Hecht v. Shenners,* 126 Wis. 27, 105 N. W. 309.

In 2 C. J. p. 1179, § 9, it is said:

"The general rule is that when the right of action depends upon the instrument an alteration works a destruction of it to such an extent that no rights can be asserted under or proved by it, and if there can be a recovery at all it must be upon other evidence."

The reasons for the rule are, (1) that no man shall be permitted, on grounds of public policy, to take the chance of committing a fraud without running any risk of loss by the event when it is detected, see cases cited in 2 C. J. p. 1176, note 29; and (2) that the identity of the instrument is destroyed, and to hold the nonconsenting party, under such circumstances, would be to make for him a contract to which he never agreed. 2 C. J. p. 1177, note 30, 2 Am. Jur. p. 622, § 35; *Mertz v. Fleming,* 185 Wis. 58, 200 N. W. 655.

It is, therefore, our conclusion that the alteration was clearly a material one, and that it invalidated the guaranty contract, and no recovery may therefore be had from the defendants thereon.

*By the Court.*—Judgment affirmed.